ACCEPTED
14-15-00337-cr
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
6/10/2015 6:02:12 PM
CHRISTOPHER PRINE
CLERK

## NO.   14-15-00337-CR

### IN THE 14th COURT OF APPEALS
at Houston, Texas

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
6/10/2015 6:02:12 PM
CHRISTOPHER A. PRINE
Clerk

### EX PARTE ALICIA BRUMANT
**Appellant,**

v.

### The State of Texas
**Appellee.**


APPELLANT'S BRIEF


HINOJOSA & SALINAS, PLLC
ROBERTO M. HINOJOSA
Texas Bar No. 24043730
2020 Southwest Fwy. Ste. 220
Houston, Texas  77098
Tel. (713)665-5060
Fax. (713)520-8808
Attorney for Appellant,
Alicia Brumant

ALAN CURRY
Chief Prosecutor, Appellant Division
Harris County
1201 Franklin, Suite 600
Houston, TX 77002
Tel. (713) 755-5800
Fax (713) 755-5809
Attorney for Appellee,
The State of Texas


**APPELLANT REQUESTS ORAL ARGUMENT**

Brumant, Alicia– Appellant's Brief                                          1

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL                                    1
INDEX OF AUTHORITIES                                               4
STATEMENT OF THE CASE                                             8
ISSUES PRESENTED                                                 9
STATEMENT OF FACTS                                               12
SUMMARY OF THE ARGUMENT                                          15
ARGUMENT                                                         18

   I.     Standard of Review                                     18

   II.    Appellant was presumptively prejudiced and received ineffective assistance of counsel when a clear conflict of interest arose and trial counsel proceeded with advising Appellant to enter a guilty plea despite the dual representation that gave rise to the conflict.                          20

      A.    Prejudice is presumed when counsel fails to subject the prosecution's case to adversarial testing. Such failure has occurred in the case before us when counsel advised Appellant to enter a guilty plea despite the fact she was aware that Appellant had a defense that should have been presented.                              24

   III.   *Chaidez v. United States* and *Ex parte De Los Reyes* do not apply to the case before us, since Appellant was affirmatively misadvised under *Ex parte Arjona*[1] as to the consequences of her plea, and therefore maintains a claim under *Padilla* and the Sixth Amendment.                   25

      A.    Noncitizens can continue to raise claims involving affirmative "material misrepresentations."                          29

   IV.   The decision reached in *Chaidez* applies to those who were convicted prior to the holding in *Padilla* and as such, the retroactivity bar is not applicable to Appellant—a Legal Permanent Resident (LPR)—because

---

[1] *Ex parte Arjona*, 402 S.W. 3d 312 (Tex. App.-Beaumont 2013).

she was given deferred adjudication and successfully completed probation, therefore she did not have a final conviction.    32

     A.    In the state of Texas, if you are a citizen, who has been given deferred adjudication for an offense and who successfully completes probation, you will not be considered to have a conviction. However, if you are a Legal Permanent Resident who has also been given deferred adjudication and who successfully completes probation, you may be considered to have a conviction pursuant to *State v. Guerrero*. This is a violation of the Equal Protection and Due Process Clauses of the 14th Amendment because this is precisely the type of Harm those Constitutional Clauses were meant to preclude.    33

     B.    The "new rule vs. old rule" threshold question of *Teague* is not applicable to an ineffective assistance of counsel claim that is the functional equivalent of a direct appeal pursuant to the clearly established precedent in *Martinez v. Ryan* and *Trevino v. Thaler.*    43

     C.    The Power vested in the Supreme Court is to interpret the constitution and laws of the United States. *Teague v. Lane* is not meant to apply to new holdings based on the United States Constitution because the Supreme Court is not a "super legislature."    44

   V.    This Writ shall be considered an "initial" Writ of Habeas Corpus, because a dismissal and denial of a Writ are treated differently, and therefore the Trial Court maintained the power to review this Writ since the first Writ was dismissed without a hearing on its merits.    47

PRAYER    50

CERTIFICATE OF SERVICE    52

# INDEX OF AUTHORITIES

Cases:

*Padilla v. Kentucky*, 130 S.Ct. 1473, 1484 (2010)…8, 9, 11, 12, 15, 16, 18, 22, 25- 28, 30-33, 41, 43, 44, 46-50

*Strickland v. Washington*, 466 U.S. 668 (1984)………21-23, 30, 45, 46, 50

*Ex Parte Tanklevskaya v. State of Texas*, 361 S.W. 3d 86 (Tex. App. – Houston [1st Dist.] 2011, pet. filed)……………..…………18, 19, 49, 50

*Chaidez v. United States*, 133 S. Ct. 1103 (2013)…8, 9, 11, 12, 16, 25-33, 41, 42, 49, 50

*Ex parte De Los Reyes*, 392 S.W.3d 675(Tex. Crim. App. 2013)…9, 11, 25-29, 41

*State v. Guerrero*, 400 S.W.3d 576 (Tex. Crim. App. 2013)…9, 10, 17, 33-39, 42, 43

*Ex parte Arjona*, 402 S.W. 3d 312 (Tex. App.-Beaumont 2013)…2, 11, 25, 31

*Cuyler v. Sullivan*, 100 S.Ct. 1708 (1980)……………..15, 23- 25, 30, 50

*Thompson v. State*, 94 S.W.3d 11(2002)…………………….…15, 22, 50

*Teague v. Lane*, 489 U.S. 288 (1989)…………………16, 27-28, 32, 43-47

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886)……………………………18, 38

*Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App. 2006)……..………18

*Ex parte Ali*, 368 S.W. 3d 827, 831 (Tex.App.-Austin 2012, pet. ref'd)…19

*Ex Parte Peterson*, 117 S.W. 3d 804, 819 (Tex. Crim. App. 2003)………19

*Harrington v. Richter*, 131 S.Ct. 770, 785 (2011)………………………..19

Brumant, Alicia– Appellant's Brief 4

*Holloway v. Arkansas*, 98 S.Ct. 1173 (1978)……………………….… 22

*Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App.1997)………23-24

*Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir.2000)……………………24

*U.S. v. Cronic*, 104 S.Ct. 2039 (1984)………………………………………25

*United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir.2012)……..25

*Marroquin v. U.S.*, 480 Fed.Appx. 94 (5th Cir. 2012)……………………25

*Hill v. Lockhart*, 106 S.Ct. 366 (1985)………………………….……..25, 27

*Santos-Sanchez v. United States*, 548 F.3d 327 (5th Cir. 2008)……27-28, 30

*United States v. Kwan*, 407 F.3d 1005 (9th Cir. 2005)……………….27-30

*United States v. Couto*, 311 F.3d 179 (2nd Cir 2002)…………………27-30

*James v. Cain*, 56 F. 3d. 662 (5th Cir. 1995)………………………………27

*Kovacs v. United States*, 744 F.3d 44 (2d Cir. 2014)………………………27

*Chavarria v. United States*, 739 F.3d 360, 362 (7th Cir. 2013)…………….27

*U.S. v. Amer*, 681 F.3d 211 (5th Cir. 2012………………………………..28-29

*United States v. Mora-Gomez*, 875 F. Supp. 1208, 1212 (E.D. Va. 1995)…28, 30

*Downs-Morgan v. United States*, 765 F.2d 1534 (11th Cir. 1985)………..29

*Ex parte Wei His Chien,* 2014 WL 3697918, (Tex.App.-Hous.1 Dist)……31

*Plyler v. Doe*, 102 S.Ct. 2382 (1982)…………………………………………36

*Oyama v. California*, 68 S.Ct. 269 (1948)……………………………………40

*Texas v. Juvrud*, 187 S.W.3d 492 (Tex. Crim. App. 2006)………………..41

*Price v. State*, 866 S.W. 2d 606, 611 (Tex. Crim. App. 1993)……………41

*Busby v. State*, 984 S.W. 2d 627, 629 (Tex. Crim. App. 1998)……………41

*Jordan v. State*, 36 S.W. 3d 871, 872, 876 (Tex. Crim. App. 2001)……..…41

*Galvan v. Press*, 347 U.S. 522 (1954)………………………………………...42

*Harisiades v. Shaugnessy*, 342 U.S. 580 (1952)…………………….…42

*Martinez v. Ryan*, 132 S.Ct. 1309 (2012)………………..………43- 46

*Trevino v. Thaler*, 133 S.Ct. 1911(2013)…………………………………43- 44

*Robinson v. State*, 16 S.W. 3d 808, 811 (Tex. Crim. App. 2000)………..44

*Griffith v. Kentucky*, 479 U.S. 314 (1987)……………………….…44

*Danforth v. Minnesota*, 128 S.Ct. 1029, 1034 (2008)……………….……45

*Massaro v. United States*, 123 S.Ct. 1690, 1698 (2003)…………..………45

*Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012)………………………..…46

*Ex Parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004)…………47

*Ex Parte Torres*, 943 S.W. 2d 469, 472 (Tex. Crim. App. 1997)…………47

*Ex parte Evans*, 964 S.W.2d 643 (Tex. Crim. App. 1998)………..………48

*Ex parte McPherson*, 32 S.W.3d 860 (Tex. Crim. App. 2000)……………49

*Ex Parte Moussazadeh*, 361 S.W.3d. 684 (Tex.Crim.App. 2012)……..…..49

U.S. Constitutions:
U.S. CONST. amend. VI………………………………………..9, 13, 16-31

U.S. CONST. amend. XIV……………………………………………..…26

U.S. CONST. art. I § 9……………………………………………………43

U.S. CONST. art. III……………………………………….…47- 48

Statutes:
8 U.S.C. § 1182 (a)(2)(A)(i)(II)…………………………………..14, 17

8 U.S.C. § 1101(a)(48)(A) (as amended)……………………….…38

INA § 212(a)(2)(A)(i)(II)…………………………………………14, 17

Tex. Crim. Proc. Code Ann. art. 11.072 ……………….…………9, 50

Tex. Crim. Proc. Code art. 42.12 § 5 (c)………..…………….………41

Tex. Crim. Proc. Code Ann. art.11.072 § (9)(a)……………..………19, 50

Other:
H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 1996…………..….…38

Dr. Suess, Horton Hears a Who! (Random House 1954)…..……………41

Rebecca Sharpless, et. al., *Teague New Rules Must Apply in Initial-Review*

*Collateral Proceedings: The Teachings of Padilla, Chaidez, and Martinez,*

67 Univ. of Miami L. Rev. (2013)………………………………...…….44

**STATEMENT OF THE CASE**

Appellant, Alicia Brumant, filed an "Application for Writ of Habeas Corpus Pursuant to Tex. Crim. Proc. Code Ann. art. 11.072 and Based on new Legal Developments from the U.S. Supreme Court." (See Clerk's Record, CR, at 4, 97)[2]. The Writ was denied without a hearing on the merits. (See CR at 97 and Clerk's Supplemental Record, CSR, at 5-7).[3] Because there was no hearing on the merits there was also no Court Reporter and no Reporters Record. The "State's Proposed Findings of Fact, Conclusions of Law and Order" adopted by the Court, are incomplete. (See CSR at 5-7). The Writ filed by Appellant was not based exclusively on *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). It also argued that *Chaidez v. United States*, 133 S. Ct. 1103 (2013), did not apply to affirmative misadvice. (See CR at 4-6). The Writ also argued that there was a conflict of interest that essentially deprived her of right to counsel under the Sixth Amendment to the U.S. Constitution.[4] (See CR at 4-6). The Writ discussed the previously filed Writ of Habeas arguing that since it was dismissed, the present writ is in essence the first writ. (See CR 4-6). The Trial Court determined that the

---

[2] All references to "CR" are to the trial court Clerk's Record.
[3] All references to "CSR" are to the trail court Clerk's Supplemental Record.
[4] U.S. CONST. amend. VI.

Application for a Writ of Habeas filed by Appellant should be dismissed because the conviction was prior to *Padilla* and therefore, under *Chaidez* and *Ex parte De Los Reyes*, 392 S.W.3d 675(Tex. Crim. App. 2013), the benefits of *Padilla* were not applied retroactive. (See CSR at 7). The Trial Court further determined that "due to the fact that Appellant's co-defendant had pled prior to her agreement to plead guilty, no actual conflict of interest existed at the time of Appellant's plea." (See CSR at 7). The Trial Court gave no legal authority for the proposition that a co-defendant's prior plea would eliminate the conflict of interest. (See CSR at 7). The Trial Court seems to have correctly treated the present writ as a first writ, but it is not clear from the "State's Proposed Findings of Fact, Conclusions of Law and Order" adopted by the Court. (See CSR at 5-7).

The Trial Court did not address the issues of Affirmative misadvise, and the inapplicability of *State v. Guerrero*, 400 S.W.3d 576 (Tex. Crim. App. 2013). (See CSR at 5-7). The Appellant's counsel orally requested the Trial Court to add to the "State's Proposed Findings of Fact, Conclusions of Law and Order" that the Court found *State v. Guerrero* was applicable in this case.[5] The Court refused to make such additional finding or conclusion

---

[5] Appellant's Counsel for the present writ is the same that is filing this brief. Appellant's counsel believes that it was a mistake not to address the *State v. Guerrero* issue at the

of law and unfortunately none of that conversation was recorded. The Record therefore shows that the Trial Court did not address the issue of the inapplicability of *State v. Guerrero* to a case involving deferred adjudication that was successfully completed by a defendant who was a Legal Permanent Resident (LPR). (See CSR at 5-7).

## ISSUES PRESENTED

Appellant, Alicia Brumant, entered a guilty plea to Possession of a Controlled Substance, less than one gram, Cause No. 875141, in the 351st District Court of Texas, pursuant to a plea agreement. Her sentence was 150 hours of community service; three years deferred probation, and $300 fine. Appellant's Trial Counsel told her that she would not have a conviction as long as she successfully completed the terms of her deferred probation an did not commit another crime. Appellant successfully completed the deferred probation.

Appellant traveled outside the country and upon her return  was apprehended by the Department of Homeland Security (DHS) and placed in removal proceedings. She was found to be inadmissible and ordered removed as a consequence of her guilty plea for "Possession of a Controlled

Trial Court level or the issue of affirmative misadvice. At the very least the Trial Court should have addressed the additional arguments raised by Appellant's application in the Findings of Fact and Conclusions of Law.

Substance, less than one gram, Cause No. 875141, in the 351ˢᵗ District Court of Texas."

The Trial Counsel that represented her also represented the co-defendant in the same matter. The Trial Counsel was informed by Appellant and by co-defendant, that Appellant was not in possession of any controlled substance or aware of the existence of the controlled substance and that the whole of the controlled substance belonged to co-defendant. The Trial Counsel, ignoring the defense being raised by Appellant, advised her to enter a guilty plea.

ISSUES:

1.      Appellant was presumptively prejudiced and received ineffective assistance of counsel when a clear conflict of interest arose and trial counsel proceeded with advising Appellant to enter a guilty plea despite the dual representation that gave rise to the conflict.

2.      *Chaidez v. United States* and *Ex parte De Los Reyes* do not apply to the case before us, since Appellant  was affirmatively misadviced under *Ex parte Arjona*[6] as to the consequences of her plea, and therefore maintains a claim under *Padilla* and the Sixth Amendment.

---

[6] *Ex parte Arjona*, 402 S.W. 3d 312 (Tex. App.-Beaumont 2013).

Brumant, Alicia– Appellant's Brief                                                                11

3.     The decision reached in *Chaidez* applies to those who were convicted prior to the holding in *Padilla* and as such, the retroactivity bar is not applicable to Appellant—a Legal Permanent Resident (LPR)—because she was given deferred adjudication and successfully completed probation. Therefore, she did not have a final conviction.

4.     This Writ shall be considered an "initial" Writ of Habeas Corpus, because a  dismissal and denial of a Writ are treated differently, and therefore the Trial Court  maintained the power to review this Writ since the first Writ was dismissed without a hearing on its merits.[7]

### STATEMENT OF FACTS

Appellant, Alicia Brumant, filed an Application for Writ of Habeas Corpus in The 351st District Court of Harris County Texas on October 29, 2014. (See CR, at 4, 97). On February 25, 2015 the Application was denied. (See CR at 97, and CSR, at 7). Alicia Brumant was not advised of the immigration consequences of her guilty plea in Cause No. 875141 in Harris County. (See CR at 6, 60-61). However, even if she had been advised as her trial counsel states in her affidavit, the advice given did not amount to

---

[7] This issue seems to have been admitted by the State and assumed by the Trial Court. However,   since it is not clearly addressed in the "State's Proposed Findings of Fact, Conclusions of Law and Order" adopted by the Court, it raised here again for the sake of thoroughness.

Brumant, Alicia– Appellant's Brief                                                                    12

effective assistance of counsel. (See CR at 63). Appellant has been a Legal Permanent Resident (LPR) since September 2, 1995 and is the mother of a United States Citizen daughter, and wife of a United States Citizen. (See CR at 41-42, 54). On October 5, 2001, Appellant pled guilty to Possession of a Controlled Substance, less than one gram, Cause No. 875141, in the 351st District Court of Texas, pursuant to a plea agreement. Her sentence was 150 hours of community service; three years deferred probation, and $300 fine. (See CR at 44-50). She complied with all the conditions of her probation and successfully completed probation. (See CR at 52). Petitioner has been a Legal Permanent Resident (LPR) since September 2, 1995. (See CR at 54). She is a native of Dominica. The Department of Homeland Security (DHS) and Immigration and Customs Enforcement, (ICE) initiated Removal Proceedings against her pursuant to 8 U.S.C. § 1182 (a)(2)(A)(i)(II), INA § 212(a)(2)(A)(i)(II). (See CR at 56-58).

When Petitioner entered her guilty plea in 2001, she was not aware that as a consequence she would be deported. (See CR at 60-61). Appellant's Trial Counsel admits she did not know that Petitioner was going to be removed because she pled guilty to Possession of a Controlled Substance other than less than 30 grams of marijuana. (See CR at 63). A quick reading of the Immigration and Nationality Act ("INA") would have warned counsel

of the immigration consequence that Appellant would face in light of Appellant's guilty plea. Although Appellant had a defense, Trial Counsel advised Appellant to plea guilty instead of going to trial. The plea rendered her subject to mandatory deportation, and in addition, if Appellant left the United States, she would be classified as an arriving alien and be inadmissible. In addition, Trial Counsel reassured Appellant that the plea was in her best interest and told her that the offense could be expunged from her record after seven years and that Trial Counsel would charge seven hundred dollars for the process. (See CR at 60-61). Trial Counsel also explained that if she successfully completed probation and there was no other charge, she would not have a conviction. (See CR at 60-61).

Furthermore, the same Trial Counsel that represented Appellant at the trial level, represented her now husband, who was her boyfriend at the time, Mr. Pickett, in the same matter. Appellant and Mr. Pickett were arrested at the same time for the same offense, and indicted for different amounts of the controlled substance. It is clear on the face of the indictment that the two cases were related. (See CR at 65, 67-68).[8] However, contrary to established professional standards, Trial Counsel met with both clients simultaneously

[8] For further proof that the same attorney, Ms. Irvin represented both clients in the same matter, please look at the second document in exhibit 9, in the space "attorney for defendant."

and represented Appellant and Mr. Pickett in court. Furthermore, Trial Counsel advised both clients to enter a plea deal, including the plea that rendered Appellant subject to mandatory deportation and inadmissibility. Mr. Pickett asserts in his sworn affidavit that he informed Trial Counsel that all of the drugs belonged to him and not the Appellant. (See CR at 70). In spite of this, the attorney did not go to trial, which would have been in the best interest of Appellant, but perhaps not in the best interest of Mr. Pickett, creating a clear conflict of interest. Alicia Brumant seeks Habeas Corpus relief because her plea counsel rendered ineffective assistance under the Sixth Amendment and *Padilla v. Kentucky* and *Cuyler v. Sullivan*,[9] and *Thompson v. State*,[10] respectively.[11] Appellant's prior Writ of Habeas Corpus filed on March 5, 2012 was dismissed on July 17, 2013, without a hearing on the merits. (See CR at 72-73).

## SUMMARY OF THE ARGUMENT

Appellant was prejudiced and received ineffective assistance of counsel when a clear conflict of interest arose in that Appellant and a

---

[9] *Cuyler v. Sullivan*, 100 S.Ct. 1708 (1980).
[10] *Thompson v. State*, 94 S.W.3d 11(2002).
[11] Appellant has been ordered removed as she was found inadmissible. The immigration Judge's order was appealed to the BIA and dismissed, affirming the Immigration Judge's decision. The decision was appealed to the 5th Circuit in case No. 13-60916. The 5th Circuit denied the appeal and affirmed the BIA. The decision may still be appealed to the U.S. Supreme Court.

defendant from the same incident were represented by the same attorney and the attorney advised Appellant to enter a guilty plea when the other defendant committed the crime and admitted this to the attorney.

Appellant, Alicia Brumant, has been restrained in her liberty when The Department of Homeland Security (DHS) and Immigration and Customs Enforcement, (ICE) initiated Removal Proceedings against her pursuant to 8 U.S.C. § 1182 (a)(2)(A)(i)(II), INA § 212(a)(2)(A)(i)(II) based on her April 19, 2001 guilty plea in the 351st District Court of Texas in Houston. The underlying retroactivity issue based on *Chaidez* should not apply to the case before us because Appellant was affirmatively misadvised as to the consequences of her plea and therefore maintains a claim under *Padilla* and the Sixth Amendment.

Appellant's removability pursuant to 8 U.S.C. § 1182 (a)(2)(A)(i)(II), INA § 212(a)(2)(A)(i)(II) is the result of ineffective assistance of counsel which is contrary to the Sixth Amendment and *Padilla v. Kentucky*. Appellant was denied effective assistance when she was advised by trial counsel to enter a plea that rendered her subject to mandatory deportation. The non-retroactivity principal reached in *Teague v. Lane*[12] *should* not apply to *Padilla*-type challenges to federal convictions because such principal

---

[12] *Teague v. Lane*, 489 U.S. 288 (1989).

would assume that habeas petitioners have already had full and fair opportunities to raise constitutional claims.

In the State of Texas, if you are a U.S. citizen who hasbeen given deferred adjudication and who successfully completed probation, you will not be considered to have a conviction. However, if you are a Legal Permanent Resident (LPR) who has also been given deferred adjudication and who successfully completed probation, you will be considered to have a conviction pursuant to *State v. Guerrero*. This is a violation of the Equal Protection and Due Process Clause of the 14th Amendment. This is precisely the type of harm meant to be precluded by the Equal Protection and Due Process Clause of the 14th Amendment. *State v. Guerrero*, can be interpreted to apply to those who would have been deported regardless of the conviction. Appellant in this case, unlike *Guerrero*, was an LPR who would not have been removed but for the conviction.

> "The Fourteenth Amendment to the Constitution is not confined to the protection of citizens. It says: "Nor shall any state deprive any person of the life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." These provisions are universal in their application, to all persons in the territorial jurisdiction, without regard to any difference in race, color or nationality; and the equal protection of the laws is a pledge of the protection of equal laws. Therefore, the questions we must consider and decide in these cases are to be treated as involving the rights of every citizen of the United States equally with those of the

strangers and aliens who now invoke the jurisdiction of the court."[13]

Appellant's prior Writ was dismissed. However, when the prior Writ was filed, the rule reached under *Padilla* could be applied retroactively. The first Writ was dismissed and as such this Writ does not count as a second Writ, since the first Writ did not reach the merits of the case. However, even if this Writ is to be considered a second Writ, under 11.072 § (9)(a), the Writ may still be filed if it contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously because the factual or legal basis for the claim was unavailable on the date the Appellant filed the previous application.

## ARGUMENT

### I. Standard of Review

In seeking Habeas Corpus relief based on an involuntary guilty plea, Appellant must prove her claim by a preponderance of the evidence. *Ex parte Tanklevskaya*, 361 S.W.3d at 91 (citing *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App. 2006)). A trial court's denial of a Writ of Habeas Corpus is reviewed under an abuse of discretion standard. *Kniatt v. State*,

---

[13] *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

206 S.W.3d 657, 664 (Tex.Crim.App.2006). A defendant who claims his plea was not knowingly and voluntary given must prove that claim by a preponderance of the evidence. *Id.* The Court shall review facts in light most favorable to the trial court's ruling and must uphold that ruling absent abuse of discretion. *Id.* However, a *de novo* review is applied when the facts are uncontested and the trial court's ruling does not turn on the credibility or demeanor of witnesses. *Ex parte Ali*, 368 S.W. 3d 827, 831 (Tex.App.-Austin 2012, pet. ref'd). Furthermore, appellate courts review *de novo* those "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Ex Parte Peterson*, 117 S.W. 3d 804, 819 (Tex. Crim. App. 2003). The First Court of Appeals has also noted that appellate courts review *de novo* those "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Ex parte Tanklevskaya,* 361 S.W.3d 86, 91 (Tex.App.--Houston [1st Dist.] 2011, pet. granted), rev'd on retroactivity grounds, 393 S.W.3d 787 (Tex.Crim.App. 2013). Ineffective assistance of counsel in a guilty plea proceeding of such magnitude as to render a guilty plea involuntary also has the effect of vitiating any waiver of Habeas Corpus relief with respect to that claim. *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). In this case the appropriate standard of review is *de novo* since the issues raised are mainly legal questions and credibility is not a factor placed

in dispute by the "State's Proposed Findings of Fact, Conclusions of Law and Order" adopted by the Court.

**II.    Appellant was presumptively prejudiced and received ineffective assistance of counsel when a clear conflict of interest arose and trial counsel proceeded with advising Appellant to enter a guilty plea despite the dual representation that gave rise to the conflict.**

The same attorney who represented Appellant at the trial level, represented her now husband, who was her boyfriend at the time, Mr. Pickett, in the same matter.  Appellant and Mr. Pickett were arrested at the same time for the same offense, and indicted for different amounts of the controlled substance.  The indictment, when viewed on its face, clearly shows that the two cases were related. However, contrary to established professional standards, the attorney met with both clients simultaneously and represented Appellant and Mr. Pickett in court. Furthermore, the attorney advised both clients to enter a plea deal, including the plea that rendered Appellant subject to mandatory deportation and inadmissibility.

Mr. Pickett asserts in his sworn affidavit that he informed trial counsel that all of the drugs belonged to him and not Appellant.  When viewing the offenses, we are able to see that Appellant was charged with a small amount of the controlled substance, less than one gram, and Mr. Pickett was charged with possessing a larger amount. In spite of this, the attorney did not go to

trial, which would have been in the best interest of Appellant, but perhaps not in the best interest of Mr. Pickett, creating a clear conflict of interest. If trial counsel would have gone to trial, it would have likely benefitted the Appellant because she had a defense due to the fact that Mr. Pickett said the full amount of the contraband belonged to him. However, Appellant was denied representation in her best interest because the attorney was representing both clients, and proceeding to trial would have been detrimental to Mr. Pickett, while benefitting Appellant.

To establish prejudice in cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant must show a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial. The Supreme Court has established the minimum requirements of the Sixth Amendment as interpreted in *Strickland*, and States have the discretion to add procedural protections under state law if they choose. *Missouri v. Fry*, 132 S.Ct. 1399 (2012). Therefore, it was clear that Appellant was prejudiced by the actions and conflicting interests of her attorney when she was advised to enter a plea that rendered her subject to

mandatory deportation and such plea would have likely not been entered but for the dual representation and conflict of interest.[14]

In *Thompson v. State*, 94 S.W.3d 11 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd), the Court held that the proper standard for determining ineffective assistance of counsel due to a conflict of interest should be determined under *Strickland v. Washington*. The Sixth Amendment to the United States Constitution guarantees in all criminal prosecutions that the accused shall have a right to reasonably effective assistance of counsel. *Thompson* at 15, citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Sixth Amendment also guarantees a defendant the right to "conflict-free" representation *Missouri v. Fry*, 132 S.Ct. 1399 (2012). The mere physical presence of an attorney does not fulfill the Sixth Amendment's guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters. *Holloway v. Arkansas*, 98 S.Ct. 1173 (1978). The vast majority of claims alleging ineffective assistance of counsel fall within the familiar *Strickland* standard. Under this standard, to prove ineffective assistance of counsel, appellant must show that (1) counsel's representation or advice fell below the objective standards of

---

[14]It should be noted that the holding in *Padilla* will not be satisfied by counsel advising a defendant to seek the advice of an immigration attorney after they have already been detained.

reasonableness; and (2) the result of the proceeding would have been different but for counsel's deficient performance. *Strickland* at 688.

Although *Strickland* governs claims based of ineffective assistance of counsel based on attorney error, *Cuyler v. Sullivan*, a case the United States Supreme Court decided four years before *Strickland*, controls certain claims of ineffective assistance of counsel involving conflicts of interest. *See Cuyler v. Sullivan*, 100 S.Ct. 1708 (1980). Under *Cuyler*, a defendant demonstrates a violation of his right to reasonably effective assistance of counsel based on a conflict of interest if he can show that (1) his counsel was burdened by an actual conflict of interest; and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler*, 100 S.Ct. 1708. Until a defendant shows his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *Id.* at 1708. A showing of the "possibility of conflict of interest" is not sufficient to overturn a criminal conviction. *Id.* But, if appellant shows an actual conflict, prejudice is presumed. *Id.* An actual conflict of interest exists if counsel is required to make a choice between advancing her client's interest in a fair trial or advancing other interests to the detriment of her client's interest. See *Monreal v. State*, 947 S.W.2d 559,

564 (Tex.Crim.App.1997); *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir.2000).

When a lawyer undertakes simultaneous representation of multiple criminal defendants, the risk of prejudice to one client or the other is so great that the law imposes an automatic assumption of prejudice. *Cuyler*, 100 S.Ct. 1708, 1709 (1980). This prejudice is perhaps best illustrated in those cases in which there is a blame shifting defense--- one of the defendants claims the other committed the offense. See *Monreal*, 923 S.W.2d at 64. If a lawyer represents two or more co-defendants in the same matter, she is legally and ethically deprived of utilizing the time-honored defense of blaming the other defendant. *Id.* Under those circumstances, the automatic presumption of prejudice is quite valid. *Id*. In this case, the attorney for Appellant was legally and ethically deprived of utilizing the time-honored defense of blaming the other defendant. Therefore, there should be an automatic presumption of prejudice in this case.

**A.** **Prejudice is presumed when counsel fails to subject the prosecution's case to adversarial testing. Such failure has occurred in the case before us when counsel advised Appellant to enter a guilty plea despite the fact she was aware that Appellant had a defense that should have been presented.**

It has been long recognized that "the breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole; specific errors and omissions may be the focus of a claim of ineffective assistance as well." *U.S. v. Cronic*, 104 S.Ct. 2039 (1984). In *Cronic*, the court held that counsel's failure to subject prosecution's case to adversarial testing amounts to constructive denial of counsel, and the reviewing court should not require petitioner to show prejudice. *Id.* [15] Furthermore, even prior to the holding in *Padilla*, the Fifth Circuit has observed that providing counsel to assist a defendant in deciding whether to plea guilty is '[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir.2012).

**III.** ***Chaidez v. United States* and *Ex parte De Los Reyes* do not apply to the case before us, since Appellant was affirmatively misadvised under *Ex parte Arjona*[16] as to the consequences of her plea, and therefore maintains a claim under *Padilla* and the Sixth Amendment.**

---

[15] Moreover, regarding the issue of prejudice, in *Marroquin v. U.S.*, 480 Fed.Appx. 94 (5th Cir. 2012),in a concurring opinion a justice spoke to the issue of presumed prejudice when stating "The district court reasoned that a court can erase the prejudice resulting from a defense attorney's failure to competently advise a noncitizen defendant during the plea process merely by stating at the plea entry proceeding that a guilty plea felony conviction would result in deportation. I find this rational deeply flawed. The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Marroquin*, citing *Hill v. Lockhart*, 106 S.Ct. 366 (1985).

[16] *Ex parte Arjona*, 402 S.W. 3d 312 (Tex. App.-Beaumont 2013).

This case is about the Appellant not being advised of the immigration consequences for a guilty plea. *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), gave Appellant the opportunity to challenge the voluntariness and validity of her guilty plea. However, before this case was resolved, the U.S. Supreme Court in *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013), held "that when the court announces a 'new rule', a person whose conviction is already final may not benefit from the decision in habeas or similar proceeding subject to two exceptions"; *see also Ex parte De Los Reyes*, 392 S.W.3d 675, 678 (Tex. Crim. App. 2013). Appellant's plea could not have been entered into knowingly and voluntarily pursuant to the requirements of *Padilla* and the law as it existed in the Fifth Circuit at the time because Appellant received affirmative misadvice. Furthermore, *Chaidez* maintains the right of immigrant defendants to use *Padilla* to challenge convictions that were not final as of March 31, 2010. Even in the case of an immigrant whose conviction became final before March 31, 2010, *Chaidez* preserves the right of an immigrant to establish ineffective assistance under the Sixth Amendment, at least in certain jurisdictions, if the immigrant can show she was affirmatively misadvised regarding immigration consequences of the criminal case, as in the case before us. Trial Counsel for Appellant not only failed to inform her that the plea would make her deportable, she told

Appellant that the offense could be expunged from her record in seven years and she would charge seven hundred dollars for the service. Trial Counsel further explained that Appellant would not have a conviction.

It has already been established that affirmative misadvice such as the advice Appellant was given violates the effective assistance of counsel principle under the Sixth Amendment. This right extends to collateral consequences, specifically parole eligibility, and immigration. *See Santos-Sanchez v. United States*, 548 F.3d 327 (5th Cir. 2008), *United States v. Kwan*, 407 F.3d 1005 (9th Cir. 2005), *United States v. Couto*, 311 F.3d 179 (2nd Cir 2002), *Hill v. Lockhart*, 474 U.S. 52 (1985), *James v. Cain*, 56 F. 3d. 662 (5th Cir. 1995) and  *Kovacs v. United States*, 744 F.3d 44 (2d Cir. 2014).[17]  It should be noted that the two cases which may be viewed as negative authority to this argument are *Ex Parte De Los Reyes* and *U.S. v.*

---

[17] In *Chaidez* the Court held that *Padilla*'s rule was new for Teague purposes because the almost unanimous consensus among lower courts, until *Padilla*, was that advice about collateral consequences was categorically outside the Sixth Amendment. *Chaidez v. United States*, 133 S. Ct. 1103, 1109 (2013). (Also see *Chaidez* at nn. 7-9). By Contrast virtually all Courts held that affirmative misadvice on matters material to a guilty plea, even about collateral consequences (including deportation), could give rise to a Sixth Amendment violation. The Federal Circuits are divided on whether *Chaidez*'s non-retroactivity rule extends to affirmative misadvice claims. The Second Circuit correctly held that, notwithstanding *Chaidez*, the affirmative misadvice rule was so well entrenched that a defendant could raise it on collateral review even after his conviction became final. See *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014). On the other side of the divide, the Seventh Circuit has held that the pre-*Padilla* state of the law governing affirmative misadvice did not dictate *Padilla*'s outcome with respect to affirmative misadvice cases. See *Chavarria v. United States*, 739 F.3d 360, 362 (7th Cir. 2013).

*Amer*.[18] In both of these cases, the defendants attempted to challenge their convictions under *Padilla* but were not able to do so because the Court applied the "new rule" issue under *Teague*. However, these two cases are in contrast to the case of the Appellant because Appellant never received a final conviction. Furthermore, *De Los Reyes* and *Amer* did not address whether affirmative misadvice would still violate the established principles of the Sixth Amendment. The 5th Circuit has not held that the retroactivity issue in *Chaidez* precludes the remedies that are required when counsel affirmatively misadvises the outcome of a plea. *See Santos-Sanchez v. United States*, 548 F.3d 327 (5th Cir. 2008) (acknowledging the legitimacy of *Couto* and *Kwan* but finding no affirmative misrepresentation). See also *United States v. Mora-Gomez*, 875 F. Supp. 1208, 1212 (E.D. Va. 1995) ("[T]he clear consensus is that an affirmative misstatement regarding deportation may constitute ineffective assistance"). In the case before us, Trial Counsel not only failed to inform Appellant that she would be deported, she told Appellant that after 7 years Appellant could have the offense expunged from her record and she would charge seven hundred dollars for the procedure, and that Appellant would not have a conviction.

---

[18] *Ex Parte De Los Reyes*, 392 S.W. 3d 675 (Tex.Crim.App. 2013), *U.S. v. Amer*, 681 F.3d 211 (5th Cir. 2012), both cases held that *Padilla* did not apply retroactively to the convictions resulting from a plea which rendered the defendants subject to mandatory deportation.

This is a material misrepresentation. Therefore, Appellant's case is distinguishable as she received affirmative misadvice and should be examined despite the holdings of *De Los Reyes* and *Amer*.

A.    **Noncitizens can continue to raise claims involving affirmative "material misrepresentations."**

A Sixth Amendment challenge based on erroneous advice is arguably not governed by the holding in *Chaidez*. The *Chaidez* Court explicitly distinguished these claims from the claim at issue in *Chaidez*, referring to a "separate rule for misrepresentations." *Chaidez v. United States*, 133 S. Ct. 1103, 1112 (2013). A lawyer violates the Sixth Amendment when she "affirmatively misrepresents her expertise or otherwise actively misleads her client on any important matter, however related to a criminal prosecution." *Id.* This argument has had the greatest force in the Second, Ninth and Eleventh Circuits, which the Court identified as recognizing this harm.[19] The Court's focus was on circuits that had so held at the time of Ms. Chaidez's plea. The Fifth Circuit held after the time of Ms. Chaidez's plea

_____

[19] See *United States v. Kwan*, 407 F.3d 1005 (9th Cir. 2005); *United States v. Couto*, 311 F.3d 179 (2nd Cir. 2002); *Downs-Morgan v. United States*, 765 F.2d 1534 (11th Cir. 1985).

that affirmative misrepresentations regarding immigration consequences could establish a claim for ineffective assistance.[20]

In light of the holding in *Chaidez*, we would like to draw a distinction. There was a "new" rule reached in *Padilla* in that the *Strickland* standard applies to counsel when failing to advise a client of immigration consequence. *Padilla*'s new rule according to *Chaidez* is confined to the duty to inform of immigration consequences. It applies to no advice but it does not change the obligation to give accurate advice; that is, affirmative misadvice is not encompassed in the *Chaidez* retroactivity ruling. The new rule is clear, as it is now a requirement under the Sixth Amendment for trial counsel to inform an alien when a plea will result in immigration consequences. However, it has already been an established right that ineffective assistance of counsel does not satisfy the Sixth Amendment right to counsel and is applicable to the states through the Fourteenth Amendment. *Cuyler v. Sullivan*, 100 S.Ct. 1708 (1980). This right to adequate assistance under the Sixth Amendment is not part of the "new rule" noted above that was established by *Padilla*.

---

[20] *Santos-Sanchez v. United States*, 548 F.3d 327 (5th Cir. 2008) (acknowledging the legitimacy of *Couto* and *Kwan* but finding no affirmative misrepresentation). See also *United States v. Mora-Gomez*, 875 F. Supp. 1208, 1212 (E.D. Va. 1995) ("[T]he clear consensus is that an affirmative misstatement regarding deportation may constitute ineffective assistance").

Brumant, Alicia– Appellant's Brief                                                    30

Even if counsel might have had no initial duty to advise defendant of the deportation consequence of his guilty plea, once counsel responded to the court's admonishment with volunteered advice, he became obligated to provide the court and defendant with accurate information. *Ex parte Arjona*, 402 S.W. 3d 312 (Tex. App.-Beaumont 2013), *Ex parte Wei His Chien*, 2014 WL 3697918, (Tex.App.-Hous.1 Dist). Affirmative misadvice by counsel regarding a material issue that the plea hearing reflects was key to the defendant's plea decision, may constitute deficient performance. *Ex parte Arjona* at 318. Therefore, the "new rule" reached in *Padilla* and analyzed under *Chaidez* is not applicable to Appellant. Appellant was affirmatively misadvised as to the consequences of her plea when counsel told her that she could later expunge the offense after seven years from Appellant's record and informed Appellant what she would charge seven hundred dollars for the service down the road, and further explained the she would not have a conviction. However, such advice was not accurate because it implied she would not be deported, first, because she would be here in seven years, and second, because it implied that she would not have a conviction upon which immigration authorities could remove her.[21]

---

[21] Deportation and removal are the same but current changes in the immigration law now use the term "removal". For purposes of this Writ, the terms are interchangeable.

**IV.** **The decision reached in *Chaidez* applies to those who were convicted prior to the holding in *Padilla* and as such, the retroactivity bar is not applicable to Appellant—a Legal Permanent Resident (LPR)—because she was given deferred adjudication and successfully completed probation, therefore she did not have a final conviction.**

In *Chaidez*, the defendant filed a petition for "coram nobis" because it was a way to collaterally attack a criminal conviction. *Chaidez v. U.S.*, 133 S.Ct. 1103 (2013). *Padilla v. Kentucky* held that the Sixth Amendment requires defense counsel to advise a defendant about the risk of deportation arising from a guilty plea but *Chaidez* narrowed its application to convictions that became final after *Padilla* was decided. *Id.* The *Chaidez* Court makes it clear that its holding applies to final convictions. The "new rule" bar that was decided in *Chaidez* was based on *Teague v. Lane* . The Court in *Chaidez* cited the language from *Teague* that gave way to the holding "Under Teague, a person whose conviction is already final may not benefit from a new rule of criminal procedure on collateral review. A case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction become final." *Chaidez*, 133 S.Ct. 1103, citing *Teague*, 489 U.S., at 301, 109 S.Ct. 1060.

The use of the term "conviction" in both *Chaidez* and *Teague* explicitly shows that this rule is only applicable to final convictions. In light

of the holding in both cases, nothing indicates that offenses that are given

deferred adjudication which are followed by the successful completion of

probation, for which no conviction ultimately results, are meant to be treated

as convictions.  Therefore, the *Chaidez* holding should not prevent the

assertion of ineffective assistance under *Padilla* when there is no final

conviction.

**A.     In the State of Texas, if you are a U.S. citizen who has been given deferred adjudication for an offense and who successfully completes probation, you will not be considered to have a conviction. However, if you are a Legal Permanent Resident who has also been given deferred adjudication and who successfully completes probation, you may be considered to have a conviction pursuant to *State v. Guerrero*. This is a violation of the Equal Protection and Due Process Clauses of the 14th Amendment because this is precisely the type of harm those consitutional clauses were meant to preclude.**

In *State v. Guerrero* the Texas Court of Criminal Appeals held that

the defendant was not entitled to admonishments regarding collateral

deportation consequences of entering a guilty plea for possession of less than

two ounces of marijuana before he could waive his right to counsel. In

addition, the Court decided his guilty plea could be recognized as intelligent

and voluntary since defendant was an undocumented immigrant who was

deportable for that reason alone, and thus the prospect of removal, and

therefore the ineffectiveness of his trial attorney, could not have reasonably

affected his decision to plea guilty. *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013).

In *Guerrero*, the Court noted that, the "Texas deferred-adjudication statute was intended to allow one to rehabilitate and have charges dismissed. In the eyes of the Texas legislature, those who have suffered a single fall from grace need not spend an entire life saddled with all the collateral consequences a criminal "conviction" carries with it. However, Congress is not required to recognize the same concepts of rehabilitation and forgiveness, as do the many states that do not consider "deferred adjudication" a 'conviction.' And it has explicitly rejected any such notion in the context of immigration law." *Id. at 587*.

However, this should not be applicable in the case before us because the Appellant here was a legal permanent resident without any other offenses on her record. But for Appellant's guilty plea for which she was given deferred adjudication, she would not have been deportable. This fact in our case is in direct contrast to the facts surrounding the defendant in *Guerrero*, who was an undocumented immigrant and subject to deportation based on that status alone.

It would be a violation of the Fourteenth Amendment if *Guerrero* were to apply to Appellant. If we were to only apply the "*Guerrero* standard" to those who are undocumented and were already deportable, prejudice could not be shown and there would be no Fourteenth Amendment, Equal Protection violation or it would be a harmless error. The *Guerrero* standard should only apply to those aliens that were already removable due to the fact they were undocumented, as the defendant in the *Guerrero* case. If the same standard is applicable to those aliens who were not deportable but for the deferred adjudication offense, then it would violate the Fourteenth Amendment. This is because the Equal Protection Clause of the Fourteenth Amendment forbids classes of people, such as aliens, or Legal Permanent Residents, to be treated differently under the law or denied equal due process, based on their status. This holds particularly true to our case because the Appellant was not deportable but for the offense that resulted in deferred adjudication. [22]

---

[22] While this difference is admitted, the statement by the Court of Criminal Appeals that Congress is not required to recognize the same concepts as the State of Texas, is misapplied in this context because it directly challenges the mandate of the U.S. Supreme Court that no State pursuant to the 14th Amendment shall apply its laws, including criminal laws, differently among people subject to its jurisdiction on the basis of nationality or alienage and at the end of the day the difference pointed out in this case is irrelevant. While discussing the difference between an alien that is deportable independent of the conviction, as the one in *Guerrero*, and an alien such as Mrs. Brumant, who is deportable or inadmissible as a result of the conviction, it is nonetheless

Section one of the Fourteenth Amendment states: "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14.

The plain meaning of the Fourteenth Amendment is clear.  No State shall deprive any person of life, liberty or property without due process of law; nor deny any person within its jurisdiction equal protection of the laws. *Id.* "Whatever his status under the immigration laws, an alien is surely a "person" in any ordinary sense of that term, and thus, is entitled to protection under equal protection laws." *Plyler v. Doe*, 102 S.Ct. 2382 (1982). Furthermore, with respect to suspect classifications such as aliens, it is appropriate to enforce the mandate under Equal Protection and require a State to demonstrate that its classification has been precisely tailored to serve a compelling governmental interest. "For Equal Protection purposes,

a constitutional principle that States cannot differentiate among its residents on the basis of alienage. The arguments here advanced should not be construed as suggesting that the principle established in *Guerrero* is constitutionally defendable.

the Supreme Court cannot ignore significant social costs borne by our nation when select groups are denied the means to absorb the values and skills which our social order rests." *Id.*

If the holding in *Guerrero* were to apply to those aliens who received deferred adjudication and would otherwise not be deportable but for that offense, it would violate the constitution. This is because deferred adjudication is applied differently to citizens versus non-citizens. To allow a procedure to be rehabilitative for citizens and not for aliens violates equal protection under the Fourteenth Amendment. Declaring that "deferred adjudication" shall be treated as a "conviction" for the purposes of immigration laws and not a conviction in any other context, does not serve a compelling interest and we cannot ignore when select social groups are targeted in violation of the Fourteenth Amendment.

The argument made in *Guerrero* supporting a new treatment of "deferred adjudication" is as follows: 8 U.S.C. § 1101(a)(48)(A) (as amended), applied and this statute broadened the definition of the term "conviction" to include deferred adjudication so that "aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered 'convicted'" could no longer escape the immigration

consequences normally attendant upon a conviction." H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 1996.  This is problematic because it applies a civil definition of conviction in the criminal context.

The language cited by the Court of Criminal Appeals does not justify its deviation from the mandate under the Fourteenth Amendment because such justification is not an amendment to the constitution that meets all the requirements of Article V of the constitution. This is a clear violation of the Equal Protection Clause because it treats aliens with offenses that resulted in deferred adjudication as if they had a final conviction, while treating U.S. citizens  who receive the same deferred adjudication as if they do not have a final conviction. The *Guerrero* decision treats similarly situated individuals differently based on alienage.  The State of Texas cannot constitutionally apply its criminal laws differently to U.S. citizens, LPRs, or any other alien. *See Yick Wo v. Hopkins*, 118 U.S. 356 (1886).  This is a cardinal rule of constitution comport.   And while *Guerrero* is precedent and binding authority for this court, the U.S. Constitution is also binding authority on this court.[23]

---

[23] One of the reasons for congress's authority to create and change immigration law is that the Supreme Court and congress have consistently perceived immigration as a civil

Therefore, in order to avoid constitutional conflict, *Guerrero* should be interpreted alternatively when applied to aliens who would not be subject to deportation but for the offense in which they received deferred adjudication.[24] There is more than one way of interpreting *Guerrero* that could relieve the holding from being in direct conflict with the Fourteenth Amendment. It should be emphasized that the defendant in *Guerrero* was still subject to removability simply for the fact that he was undocumented. The holding in *Guerrero* cannot be applied to Legal Permanent Residents without violating the Equal Protection Clause because to do so would treat aliens with offenses that resulted in deferred adjudication differently than U.S. citizens with the same offenses which also resulted in deferred adjudication. This difference is extreme and condemns any alien with a blemish on their criminal record that otherwise would not be a final conviction and subjects them to deportation. Therefore, Appellant's offense that resulted in deferred adjudication should not be considered a "final conviction" when it is not even a "conviction". "In reviewing a case in which federal constitutional rights are asserted, the United States Supreme

---

matter and not criminal, and the Supreme Court has repeatedly stated that the prohibition against ex post facto law only applies to criminal law.

[24] An alien who is mandatorily deportable as a result of a conviction is prejudiced when he declines to go to trial because his attorney did not tell him that he would be mandatorily deportable. The holding in *Guerrero* is based on the fact that in that case there was no prejudice, but prejudice is present in this case.

Court must inquire not merely whether those rights have been denied in express terms but also whether they have been denied in substance and effect, and must review independently both legal issues and factual matters with which they are commingled." *Oyama v. California*, 68 S.Ct. 269 (1948). For these reasons, the Sixth Amendment should protect Appellant and not treat her differently simply because she is an alien and a Legal Permanent Resident who received deferred adjudication. If Appellant's offense is to be treated as a conviction, it would violate the Equal Protection clause of the Fourteenth Amendment because the State of Texas would be applying its laws differently among equally situated residents of the State.[25]

TEX. CRIM. PROC. CODE art. 42.12 § 5 (c) states that "[o]n expiration of a community supervision period imposed under subsection (a), if the judge has not proceeded to adjudication of guilt, the judge shall dismiss the proceedings against the defendant and discharge him….a dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense." When a judge discharges a defendant from

---

[25] In the classic children's book by Dr. Seuss, Horton Hears a Who!, we were taught as children that a person is a person no matter how small. DR. SUESS, HORTON HEARS A WHO! (Random House 1954). These are values reflected in the constitution that we should not ignore.

Deferred Adjudication, he has no discretion but must dismiss the proceedings against the defendant who is left with no conviction. *Texas v. Juvrud*, 187 S.W.3d 492 (Tex. Crim. App. 2006). In this case, Appellant was placed on Deferred Adjudication and community supervision and discharged, so she did not have a final conviction. *Price v. State*, 866 S.W. 2d 606, 611 (Tex. Crim. App. 1993). When a court grants Deferred Adjudication probation there has been no conviction. *Busby v. State*, 984 S.W. 2d 627, 629 (Tex. Crim. App. 1998). Defendant may be convicted at the moment that he violates probation or the judge may dismiss the proceedings against him leaving him with no conviction if he successfully completes probation. *Jordan v. State*, 36 S.W. 3d 871, 872, 876 (Tex. Crim. App. 2001). The holdings in *Chaidez v. United States* and *Ex parte De Los Reyes* do not apply to this case because each of these cases require a final conviction for *Padilla* retroactivity issue to apply. Appellant does not have a final conviction according to Texas law. *Chaidez v. United States,* 133 S.Ct. 1103, 1107 (2013) [states that when the court announces a "new rule," a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding subject to two exceptions]; *see also Ex parte De Los Reyes*, 392 S.W.3d 675, 678 (Tex. Crim. App. 2013). The Texas Court of Criminal Appeals has taken the position that although

deferred adjudication is not a conviction under Texas law it is a final conviction for purposes of Immigration law. Texas will apply immigration law in the context of a writ of habeas governed by the code of criminal procedure. *State v. Guerrero*, 400 S.W. 3d 576, 587-588 (Tex. Crim. App. 2013). The flaw with this reasoning is that the definition of a final conviction for immigration purposes does not control what constitutes a final conviction for habeas corpus under the code of criminal procedure. The United States Congress has almost unfettered power in matters of immigration precisely because the U.S. Supreme Court has stated that immigration and deportation proceedings are civil in nature. See *Galvan v. Press*, 347 U.S. 522 (1954) and *Harisiades v. Shaugnessy*, 342 U.S. 580 (1952). If now State Courts begin to apply immigration law to their criminal proceedings, the long standing doctrine of the U.S. Supreme Court would be out the window, and the U.S. Const. art. I § 9 forbidding ex post facto enactments would be a major restriction on Congress' ability to implement immigration law. Pursuant to the longstanding doctrine of the U.S. Supreme Court, deportation is civil rather than criminal. The civil immigration laws cannot control the criminal process.

The Fourteenth Amendment does not allow States to "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."[26] Under *State v. Guerrero*, similarly situated individuals would benefit from the *Padilla* ruling merely by not being aliens. In Texas, a deferred adjudication is not a final conviction for *Padilla* purposes unless you are an alien. For this reason *State v. Guerrero* is contrary to basic constitutional concepts of due process and equal protection.

**B.      The "new rule vs. old rule" threshold question of *Teague* is not applicable to an ineffective assistance of counsel claim that is the functional equivalent of a direct appeal pursuant to the clearly established precedent in *Martinez v. Ryan* and *Trevino v. Thaler*.**

In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Supreme Court concluded, "[w]here, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim." *Martinez v. Ryan* at 1317. In *Trevino v. Thaler*, 133 S.Ct. 1911(2013), the Supreme Court applied the *Martinez* exception to a Texas case despite the fact that the theory of the ineffective assistance of counsel claim could have been brought

---

[26] U.S. CONST. amend. XIV § 1.

on direct appeal, but the opportunity was not meaningful.[27] In *Trevino v. Thaler*, the Supreme Court noted, "[t]he structure and design of the Texas system in actual operation, however, make it 'virtually impossible' for an ineffective assistance claim to be presented on direct review. See *Robinson v. State*, 16 S.W. 3d 808, 811 (Tex. Crim. App. 2000).[28] After this notation the court concludes that the Martinez exception applies. Considering that in Texas the collateral proceeding as to Ineffective Assistance of Counsel Claim is the equivalent to a direct appeal, this case does not present a "new rule v. old rule" problem under *Teague*. The logic of *Griffith v. Kentucky*, 479 U.S. 314 (1987) that new rules apply to all cases not yet final on direct appeal applies here. As such, this court should follow the precedent of the Supreme Court.

**C.      The Power vested in the Supreme Court is to interpret the constitution and laws of the United States. *Teague v. Lane* is not meant to apply to new holdings based on the United States Constitution because the Supreme Court is not a "super legislature."[29]**

---

[27] See Rebecca Sharpless, et. al., *Teague New Rules Must Apply in Initial-Review Collateral Proceedings: The Teachings of Padilla, Chaidez, and Martinez*, 67 Univ. of Miami L. Rev. (2013).

[28] *Trevino v. Thaler*, 133 S.Ct. 1911, 1915 (2013), citing *Robinson v. State Robinson v. State*, 16 S.W. 3d 808, 811 (Tex.Crim.App. 2000).

[29] We are aware that this statement is contrary to the holding of *Chaidez* but we still would like to advocate the plausibility of such argument to preserve error.

*Teague v. Lane*, 489 U.S. 288 (1989), did not present, and the Supreme Court did not resolve, the question of whether its retroactivity regime applies to post-conviction filings challenging federal, as opposed to state, convictions. See *Teague*, 498 U.S. at 327 n.1 (Brennan, J., dissenting)(noting that the Court "does not address whether the rule it announces today extends to claims brought by federal, as well as state, prisoners"). Years later, the Supreme Court expressly reserved this issue. *Danforth v. Minnesota*, 128 S.Ct. 1029, 1034 (2008). *Teague's* bar against the retroactive application of new constitutional rules of criminal procedure rests on two bases: comity and finality. *Teague*, 489 U.S. at 308. Neither of these interests justifies applying *Teague* to a person seeking collateral relief from a federal conviction due to ineffective assistance of counsel. Comity considerations are absent when a federal court is reviewing a federal conviction and *Strickland's* highly deferential framework already accommodates the finality interest at stake when a court adjudicates an ineffective-assistance challenge to a federal conviction of collateral review.[30] *Teague's* non-retroactivity principle relies on a critical assumption that habeas petitioners have already had a full and fair opportunity to raise their constitutional claims. *Teague*, 489 U.S. at 308-309. This assumption

---

[30] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

does not apply to initial *Padilla*-type challenges to federal convictions. In *Massaro v. United States*, 123 S.Ct. 1690, 1698 (2003), the Supreme Court instructed that ineffective-assistance challenges to federal convictions must be raised for the first time on collateral review, at least when they depend on evidence outside the trial record. *Padilla* claims fit that mold. Specifically, trial records generally do not include evidence as to whether defense attorneys advised their clients that pleading guilty would have resulted in deportation consequences. *See Padilla*, 130 S.Ct. at 1483. Even in the rare instances in which a trial record does include such information, it does not provide evidence necessary to show, as required by the prejudice prong of the *Strickland/Padilla* test, that if the defendant had received such advice, she would have not have pled guilty. *Id.* Accordingly, *Padilla*-type claims must be litigated in what the Supreme Court has called "initial-review collateral proceedings." *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012). As such, there is no basis for applying *Teague* in this context.

*Teague v. Lane* was meant to correct the problem that arguably the Supreme Court acts as a legislature when it chooses which laws are new and old and which should apply retroactively or not, it was not meant to give the Supreme Court power to decide when constitutionally interpreted

protections should begin or end. If the U.S. Supreme Court has the power to interpret what the constitution meant and whether it could be applied retroactively or not based on whether the rule is new or old, it would be acting as a constitutional convention. *Teague* did not give the Supreme Court the power to act as a constitutional convention. *See* Article III of the U.S. Constitution. When the U.S. Supreme Court announces a rule regarding constitutional rights it is in a very narrow sense only recognizing a constitutional right that was always there, because article III of the U.S. Constitution does not empower the U.S. Supreme Court to act as a legislature much less as a Constitutional Convention. In my view, I respectfully disagree with the concept that the United States Supreme Court can make Constitutional decisions such as the one involving the Sixth amendment in *Padilla* and classify it as a "new or old rule". Once the U.S. Supreme Court has made a constitutional decision the classification of new or old should have no impact. Rather, the fact that it is a constitutional decision should mean that only in the rarest of circumstances the decision would not be applied retroactively.

**V.      This Writ shall be considered an "initial" Writ of Habeas Corpus, because a dismissal and denial of a Writ are treated differently, and therefore the Trial Court maintained the power to review this**

**Writ since the first Writ was dismissed without a hearing on its merits.**

A "denial" of a Writ means the court addressed and rejected the merits of a particular claim or determined that its merits are not cognizable. A "dismissal" means the court declined to consider the claim for reasons unrelated to the merits. *Ex Parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004), *Ex Parte Torres*, 943 S.W. 2d 469, 472 (Tex. Crim. App. 1997). The Writ filed on behalf of the Appellant on July 13, 2013, was dismissed. Subsequent writ applications (i.e., those filed after final disposition of an initial application challenging the same conviction) will get the prisoner nothing unless he meets the § 4 exceptions. However, where the initial application did not challenge the conviction, a subsequent application doing so will be treated as an initial application. *Ex parte Evans*, 964 S.W.2d 643 (Tex. Crim. App. 1998) (subsequent writ application not barred by statute because prior application did not involve claim challenging his conviction). *See also Ex parte McPherson*, 32 S.W.3d 860 (Tex. Crim. App. 2000) (application seeking out-of-time appeal does not bar subsequent application

challenging conviction)[31]; *Evans*, supra (application challenging prior parole revocation does not bar subsequent application challenging conviction).

The initial Writ for Habeas Corpus in the case before us was filed on July 17, 2013, and was dismissed without any consideration or a hearing on the merits. Therefore, the Writ that was dismissed never challenged the conviction and, as such, this Writ shall be considered the initial Writ.

Appellant's prior Writ was dismissed. However, when the prior Writ was filed, the rule reached under *Padilla* could be applied retroactively because *Chaidez* had not been decided. Furthermore, the holding of *Tanklevskaya* was still good law and had not been overturned.[32] The first Writ was dismissed and as such, this Writ does not count as a second Writ, because the first Writ did not reach the merits of the case. However, even if this Writ is to be considered a second Writ, under 11.072 § (9)(a), the Writ may still be filed and considered if it contains sufficient specific facts

---

[31] An initial writ of habeas corpus seeking an out-of-time appeal does not constitute a challenge to the conviction and does not bar subsequent writ applications. *Ex Parte Moussazadeh*, 361 S.W.3d. 684 (Tex.Crim.App. 2012).

[32] *Ex parte Tanklevskaya*, 361 S.W.3d 86 (Tex. App.—Houston 1st Dist. 2011), held that plea counsel's failure to specifically inform defendant that a guilty plea would render her presumptively inadmissible upon leaving and attempting to re-enter the United States constituted deficient performance and defendant was prejudiced by the deficient performance and that trial court's statutory admonishment prior to accepting guilty plea did not cure the prejudice. This was good law until 2013, when the judgment was vacated. See *Ex parte Tanklevskaya,* 393 S.W.3d 787 (Crim. App. Tex. 2013).

establishing that the current claims and issues have not been and could not have been presented previously because the factual or legal basis for the claim was unavailable on the date the Appellant filed the previous application. The arguments of this Writ are based on new developments of law that did not exist at the time the dismissed Writ was filed. At the time the dismissed Writ was filed *Chaidez* had not yet been decided. Furthermore, in the State of Texas *Padilla* had been applied retroactively. See *Ex parte Tanklevskaya*, 361 S.W.3d 86 (Tex. App.—Houston 1st Dist. 2011), later vacated by *Ex parte Tanklevskaya,* 393 S.W.3d 787 (Crim. App. Tex. 2013). Therefore, this Writ may also be considered based upon Tex. Crim. Proc. Code Ann. art. 11.072 § (9) (Vernon 2012).

## VI.    Prayer

Accordingly, Appellant has established that his plea counsel's representation constituted deficient performance under the Sixth Amendment, *Strickland* , *Padilla v. Kentucky, Cuyler v. Sullivan,*[33] and *Thompson v. State,* and that, but for counsel's deficient advice, she would not have pleaded guilty. Furthermore, due to plea counsel's ineffective

---

[33] *Cuyler v. Sullivan*, 100 S.Ct. 1708 (1980).

assistance, Appellant involuntarily pleaded guilty. Therefore, habeas corpus relief should be GRANTED.

Respectfully submitted,

/s/ Roberto M. Hinojosa
ROBERTO M. HINOJOSA
Texas Bar No. 24043730
2020 Southwest Fwy. Ste. 220
Houston, Texas 77098
Tel. (713)665-5060
Fax. (713)520-8808
Attorney for Appellant,
Alicia Brumant

## **CERTIFICATE OF SERVICE**

I certify that on June 10, 2015 a true and correct copy of Appellant's brief was served via electronic filing e-service to each person listed below by the method indicated.

/s/ Roberto M. Hinojosa
ROBERTO M. HINOJOSA

*Via **eService Only***

ALAN CURRY
Chief Prosecutor, Appellant Division
Harris County
1201 Franklin, Suite 600
Houston, TX 77002
Tel. (713) 755-5800
Fax (713) 755-5809
Attorney for Appellee,
The State of Texas