In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3549

JULIO CESAR CHAVARRIA,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:10-CV-191 — **Joseph S. Van Bokkelen**, *Judge*.

ARGUED OCTOBER 1, 2013 — DECIDED JANUARY 9, 2014

Before CUDAHY, RIPPLE, and HAMILTON, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This case involves an ineffective assistance of counsel claim concerning the effect of Chavarria's guilty plea on his immigration status. Defendant Julio Cesar Chavarria, born in Mexico, became a legal permanent resident of the United States in 1982. In 2009, Chavarria was charged with, and pleaded guilty to, four counts of distributing cocaine.

One year later, the United States Supreme Court decided *Padilla v. Kentucky*, 559 U.S. 356 (2010). *Padilla* imposed a duty on criminal attorneys to inform noncitizen clients of deportation risks stemming from plea agreements, and for the first time held that the Sixth Amendment supported ineffective assistance of counsel claims arising from legal advice, or the lack thereof, involving the prospect of deportation resulting from guilty pleas. *See Chaidez v. United States*, 132 S. Ct. 1103, 1110 (2012) (explaining the new *Padilla* rule). Chavarria then filed a *pro se* motion involving such a claim, pursuant to 28 U.S.C. § 2255.

Chavarria alleged that his criminal trial counsel responded to his deportation queries by indicating that Chavarria need not worry about deportation—specifically that "the attorney had checked with the Bureau of Immigration and Customs Enforcement … and they said they were not interested" in deporting him. Chavarria also alleged that his attorney had counseled him to defer to the cues of his attorney during questioning by the district court. In connection with his § 2255 motion, Chavarria filed a Petition to Stay Deportation Proceedings, but by the time counsel had been appointed for these motions, he had already been deported. The government subsequently sought to dismiss Chavarria's § 2255 motion based, in part, on the contention that *Padilla* announced a new rule not to be applied retroactively. The district court denied the government's motion for dismissal, holding that the *Padilla* rule could be applied retroactively.

Shortly thereafter, we issued our opinion in *Chaidez v. United States*, 655 F.3d 684 (7th Cir. 2011). The *Chaidez* majority concluded that *Padilla* was a new rule and not retroactive. In light of *Chaidez*, the district court vacated its ruling based

on the retroactivity of *Padilla*, and dismissed Chavarria's §
2255 motion.

Chavarria appealed, challenging both our decision in
*Chaidez*, and the district court's application of it here. After
the government filed its response brief, the Supreme Court
granted *certiorari* in *Chaidez* and subsequently affirmed. After
*Chaidez* thus foreclosed Chavarria's argument that *Padilla*
was retroactive, he now argues that *Chaidez* distinguished
between providing no advice (actionable under the *Padilla*
rule) and providing bad advice (actionable under pre-*Padilla*
law).

## I.

At the outset we briefly note that *Chaidez* foreclosed any
argument that *Padilla* was retroactive, the original basis of
Chavarria's appeal. On collateral review, lacking retroactivi-
ty, we will look only to the state of the law at the time the
conviction became final. For that reason, Chavarria original-
ly argued that *Padilla* did not propound a new rule, but that
it was merely another step in the evolution of ineffective as-
sistance claims. However, the Supreme Court decided defini-
tively that *Padilla* announced a new rule, which was not ret-
roactive, when it affirmed our decision in *Chaidez*. *Chaidez*,
133 S. Ct. at 1105.

## II.

His retroactivity argument gone, Chavarria now argues
that under *Padilla* only failure to advise of immigration con-
sequences constitutes ineffective assistance under the Sixth
Amendment, but affirmative misadvice provides an alterna-
tive basis for a constitutional claim under pre-*Padilla* law.

This argument about affirmative misadvice is based on certain *Chaidez* language, which recognized precedent from three circuits holding that, pre-*Padilla*, misstatements about deportation could support an ineffective assistance claim. *Chaidez*, 133 S. Ct. at 1112 ("Those decisions [in three circuits] reasoned only that a lawyer may not affirmatively misrepresent his expertise or otherwise actively mislead his client on any important matter, however related to a criminal prosecution."). Thus, Chavarria argues that *Padilla* is irrelevant to Chavarria's situation—because affirmative misrepresentations have long been subject to challenge under the test of *Strickland v. Washington*, 466 U.S. 668 (1984).

Chavarria's argument fails, first, because the distinction between affirmative misadvice and non-advice was not a relevant factor in *Padilla*. Second, the precedent, pre-*Padilla*, supporting the application of *Strickland* in this context is insufficient to satisfy *Teague v. Lane*. 489 U.S. 288, 301 (1989)(holding that to impart retroactivity, a rule must be supported by ample existing precedent).

A lawyer's advice about matters not involving the "direct" consequences of a criminal conviction—collateral matters—is, in fact, irrelevant under the Sixth Amendment; such advice is categorically excluded from analysis as professionally incompetent, as measured by *Strickland*. *Padilla* departed from this direct-collateral distinction because of the "unique" nature of deportation. *Padilla*, 559 U.S. at 366. That case determined that "a lawyer's advice (or non-advice)" should not be exempt from Sixth Amendment scrutiny without reference to the traditional distinction between direct and collateral consequences. *Chaidez*, 133 S. Ct. at 1110. Therefore, in its analysis, the *Padilla* majority was uncon-

cerned with any distinction between affirmative misadvice and non-advice; because, until *Padilla* was decided, the Sixth Amendment did not apply to deportation matters at all. *Id.* ("It was *Padilla* that first rejected the categorical approach—and so made the *Strickland* test operative—when a criminal lawyer gives (or fails to give) advice about immigration consequences."). Thus, regardless of how egregious the failure of counsel was if it dealt with immigration consequences, pre-*Padilla*, both the Sixth Amendment and the *Strickland* test were irrelevant.

The *Chaidez* majority jointly referred to both misadvice and non-advice throughout its opinion. There is no question that the majority understood that *Padilla* announced a new rule for all advice, or lack thereof, with respect to the consequences of a criminal conviction for immigration status. If taken out of context, language in *Chaidez* offers some support for Chavarria's argument, but that language is contradicted by a substantial amount of more specific language in the same opinion. *See e.g.*, *Chaidez*, 133 S. Ct. at 1110 (referring jointly to scrutiny of a lawyer's misadvice and "non-advice").

Ironically, Chavarria asks us to recognize a distinction between misadvice and non-advice, even though *Padilla* was itself about an affirmative misrepresentation. In fact, this distinction, which is thin on its own terms, fails on *Padilla*'s facts. Thus, Chavarria is essentially asking us to hold that *Chaidez* held that the *Padilla* rule is not retroactive *except* on *Padilla*'s own facts (which involved misadvice). In fact, the *Padilla* majority, in responding to the government's argument to limit its holding, specifically discussed limiting its holding to *only* affirmative misadvice, but did not because of the pos-

sible absurd results. *Padilla*, 559 U.S. at 370–71. This discussion signals that the *Padilla* majority had no intent to exclude *either* affirmative misadvice or non-advice from the new rule it announced.

Finally, Chavarria relies on cases from three federal circuits to prove that the distinction between affirmative misadvice and the failure to advise, and a constitutional rule based on that distinction constitutes pre-*Padilla* precedent. Yet, under *Teague*, the rule sought by Chavarria must be *dictated* by existing precedent. *Teague*, 489 U.S. at 301. Chavarria cannot simply show the existence of such a distinction, but instead he must show that the distinction was so evident "that all reasonable judges, prior to *Padilla*, thought they were living in a *Padilla*-like world." *Chaidez*, 133 S. Ct. 1112.

The Court supported this conclusion by reiterating the trend among the lower courts, which viewed such collateral deportation matters as beyond the reach of the Sixth Amendment. *Id.* at 1113. The Court stated, "[o]n those courts' view, the Sixth Amendment no more demanded competent advice about a plea's deportation consequences than it demanded competent representation in the deportation process itself. *Padilla* decided that view was wrong. But to repeat: it was *Padilla* that did so." *Id.* The material misrepresentations that were upheld by those three circuits cannot support a constitutional rule to be applied retroactively, since an old rule is one "limited to those holdings so compelled by precedent that any contrary conclusion must be deemed unreasonable." *See Lambrix v. Singletary*, 520 U.S. 518, 538 (1997). At the time Chavarria's case became final, precedent did not dictate that preclusion of an ineffective assistance claim was unreasonable when it arose from an at-

torney's material misrepresentation of a deportation risk. Thus, even if this Court were to find the misadvice/non-advice distinction relevant to this analysis, it does not have the clear precedential weight to be considered a pre-*Padilla* rule.

The district court correctly concluded that it was bound by *Chaidez* and that *Padilla* had no retroactive effect on Chavarria's case. Having determined that the distinction between affirmative misadvice and failure to advise does not somehow evade the non-retroactivity of Padilla, we AFFIRM.