Opinion by Judge D.W. NELSON; Concurrence by Judge BYBEE; Dissent by Judge IKUTA.
OPINION
D.W. NELSON, Senior Circuit Judge:
Appellant Maureen Elaine Chan, a/k/a Maureen Ridley (“Chan”), appeals the district court’s dismissal of her petition for a writ of error coram nobis. This case requires us to determine,the retroactivity of our prior decision in United States v. Kwan, 407 F.3d 1005 (9th Cir.2005). Because we conclude that Kwan both survives Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and did not establish a new rule of criminal procedure under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), we thus hold that Kwan applies retroactively to Chan’s case. Accordingly, we reverse the district court’s order dismissing Chan’s petition and remand for further proceedings consistent with this opinion.
I. Background
On June 22, 1993, Chan was charged with six counts of perjury under 18 U.S.C. § 1623. Chan pleaded guilty pursuant to a plea agreement to three counts of perjury and was sentenced to two months imprisonment, three years of supervised re *1153 lease, and a special assessment of $150. Chan is a British citizen but has been a lawful permanent resident of the United States since 1973.
Prior to pleading guilty, Chan alleges that she consulted with her attorney and specifically asked him whether a guilty plea would affect her immigration status. She further alleges that her attorney assured her that she would not face any adverse immigration consequences.
Chan states that on February 28, 2012, she was stopped by U.S. Customs and Border Protection agents at Los Angeles International Airport, who then confiscated her passport and permanent resident card. On November 15, 2012, the Department of Homeland Security initiated removal proceedings against Chan and served her with a Notice to Appear, charging her as inadmissible under § 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act as an immigrant convicted of a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I).
On May 15, 2013, Chan brought a petition for writ of error coram nobis in the district court. Chan sought to withdraw her guilty plea and supported her petition with one claim of ineffective assistance of counsel (“IAC”), alleging that defense counsel affirmatively misrepresented the adverse immigration consequences of her conviction. Chan claimed that, had she known the true nature of the immigration consequences of her potential convictions, she would have requested a different plea deal or gone to trial.
On September 24, 2013, the government filed a motion to dismiss the petition. The district court granted the government’s motion to dismiss, concluding that Kwan established a new rule of criminal procedure under Teague and, therefore, did not have retroactive effect. Chan timely appealed the district court’s dismissal to this court.
II. Standard of Review
"A district court’s denial of a petition for a writ of error coram nobis is reviewed de novo.” United States v. Riedl, 496 F.3d 1003, 1005 (9th Cir.2007).
III. Discussion
“[T]he writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable.” Id.; see also United States v. Morgan, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (describing the writ of error coram nobis as an “extraordinary remedy” available “only under circumstances compelling such action to achieve justice”). In order to establish that she qualifies for coram nobis relief, the petitioner must show the following four factors:
(1) a more usual remedy is not available;
(2) valid reasons exist for not attacking the conviction earlier;
(3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and
(4) the error is of the most fundamental character.
Riedl, 496 F.3d at 1006 (quoting Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir.1987)).
The district court dismissed Chan’s petition under—and the parties only dispute—the fourth factor. Specifically, the district court concluded that because Kwan established a new rule under Teag-ue and, thus, does not apply retroactively, Chan had failed to state a claim for IAC and could not show that there was an error of “the most fundamental character.”
To determine whether Chan may proceed with her IAC claim under Kwan, we *1154 first look to whether Kwan survives Padilla.[1] We then turn to whether this case is controlled by Chaidez v. United States, — U.S. -, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013), which concluded that Padilla does not apply retroactively, and whether Kwan established a new rule of criminal procedure under Teague.
A. Whether Padilla Abrogates Kwan
In Kwan, we held that affirmatively misleading a client regarding the immigration consequences of a conviction could constitute the basis for an IAC claim. 407 F.3d at 1015. We noted that our holding was notwithstanding our earlier-espoused rule that “an attorney’s failure to advise a client of the immigration consequences of a conviction, without more, does not constitute ineffective assistance of counsel.” Id. (citing United States v. Fry, 322 F.3d 1198, 1200 (9th Cir.2003), abrogated by Padilla, 559 U.S. 356, 130 S.Ct. 1473).
Five years after Kwan, the Supreme Court changed the landscape of IAC claims and held that, in order to satisfy the Sixth Amendment, defense counsel “must inform her client whether his plea carries a risk of deportation.” Padilla, 559 U.S. at 374, 130 S.Ct. 1473. This holding abrogated the existing rule in all ten courts of appeals that had reached this issue — including ours, Fry, 322 F.3d 1198 — as the courts of appeals had uniformly concluded that the mere failure to advise regarding the possibility of deportation could not establish an IAC claim. Chaidez, 133 S.Ct. at 1109 & n. 7.
Padilla was simultaneously broader and narrower than our decision in Kwan: broader in that Padilla reached affirmative misrepresentations and failure to advise, but narrower in that Padilla concerned only deportation whereas Kwan considered all “immigration consequences.” Compare Padilla, 559 U.S. at 364-66, 369-74, 130 S.Ct. 1473, with Kwan, 407 F.3d at 1015-17. Further, the crux of Padilla’s holding was to reject the direct/collateral consequence distinction in the context of deportation to “conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel.” 559 U.S. at 366, 130 S.Ct. 1473. Kwan, though, concerned itself more with the fact that an attorney misadvised his client about a matter material to the client’s decision to enter into a plea agreement. See 407 F.3d at 1016 (“[C]ounsel made an affirmative representation to Kwan that he had knowledge and experience regarding the immigration consequences of criminal convictions; as a result, counsel had a professional responsibility to [correctly] inform himself and his client....”). Thus, while Padilla clearly abrogated Kwan to the extent that Kwan reaffirmed the rule in Fry, see Kwan, 407 F.3d at 1015, Kwan’s holding that affirmative misrepresentations by counsel regarding immigration consequences constitutes deficient performance under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), clearly survives Padilla.
B. Whether Chaidez Controls Kwan
We next turn to the government’s argument that Kwan is controlled by Chaidez. The government contends that for the same reasons Chaidez concluded Padilla announced a new rule and was not retroactive, Kwan must also have announced a new rule and not be retroactive. Because we find Kwan sufficiently distinguishable from-Padilla, we conclude Kwan is not controlled by Chaidez.
*1155 In Chaidez, the Supreme Court held that Padilla did not have retroactive effect. 133 S.Ct. at 1105. In evaluating Padilla under the Teague framework, the Court explained that Padilla had not simply applied the “general standard” for IAC in Strickland, but rather “did something more.” Chaidez, 133 S.Ct. at 1107, 1108. That “something more” was answering a threshold question: whether Sixth Amendment protections governing the competence of defense counsel extended to advice regarding deportation. Id. In concluding that they did, the Court answered in part a question left explicitly open in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), whether the Sixth Amendment covered so-called “collateral consequenee[s]” of a conviction. Chaidez, 133 S.Ct. at 1108 (citing Hill, 474 U.S. at 60, 106 S.Ct. 366). Importantly, as we noted above, the Court answered this question in Padilla by rejecting the direct/collateral consequence distinction, declining to label deportation as either and, instead, identifying it as “unique.” Id. at 1110 (quoting Padilla, 559 U.S. at 365, 130 S.Ct. 1473) (internal quotation marks omitted). As such, Padilla fundamentally altered Sixth Amendment jurisprudence in at least partially breaking down the distinction between direct and collateral consequences. Id. at 1110-11.
Kioan’s much narrower holding instead focused on whether counsel’s performance was deficient. See 407 F.3d at 1015-17. Kwan did not assert Padilla’s, holding that attorneys could be liable for failing to advise about adverse immigration consequences; rather, Kwan merely held that attorneys’ affirmative misrepresentations — or incorrect answers to direct questions from clients — regardless of their subject matter would be deficient performance under Strickland. Id. Thus, Kwan’s analysis rested on the distinction between failure to advise and affirmative misadvice, not on the direct/collateral/unique nature of the consequence faced by the petitioner. While there is some language in Chaidez that appears to cover both failure to advise and affirmative misrepresentations, see 133 S.Ct. at 1110 (“Padilla ... made the Strickland test operative ... when a criminal lawyer gives (or fails to give) advice about immigration consequences.”), Chai-dez also recognized that prior to Padilla, certain circuits “recognized a separate rule for material misrepresentations,” which “lived in harmony with” other precedent excluding claims based on failure to advise, id. at 1112.
Because Chaidez focused on the novelty of Padilla’s threshold inquiry as to whether the Sixth Amendment ever applies to advice regarding deportation advice — an analysis absent from Kwan — we conclude that Kwan is not controlled by Chaidez and thus proceed with our own analysis of Kwan under Teague.
C. Kwan Under the Teague Framework
Lastly, we must determine whether, as the district court concluded and the government argues, Kwan constituted a new rule of criminal procedure under Teague and thus cannot be applied retroactively. We agree with Chan that Kwan did not establish a new rule under Teague, and we reverse the district court on that basis.
The framework we proceed under to determine retroactivity under Teague is clear: first,[2] we determine “the date upon *1156 which the defendant’s conviction became final.” Lambrix v. Singletary, 520 U.S. 518, 527, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). Second, we “survey the legal landscape as it then existed and determine whether a ... court considering the defendant’s claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution.” Id. (internal quotation marks, brackets and citations omitted). Finally, if the rule is a “new rule,” we must determine “whether the relief sought falls within one of the two narrow exceptions to nonretroactivity.” Id.
In this case, Chan’s conviction became final in 2000. Accordingly, we are required to “survey the legal landscape” at that time to determine whether Chan would have been vindicated in seeking to apply the rule in Kwan to her case.
“[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s conviction became final.” Chaidez, 133 S.Ct. at 1107 (quoting Teague, 489 U.S. at 301, 109 S.Ct. 1060) (internal quotation marks omitted). Further, “a holding is not so dictated ... unless it would have been ‘apparent to all reasonable jurists.’” Id. (quoting Lambrix, 520 U.S. at 527-28, 117 S.Ct. 1517). However, “ ‘[w]here the beginning point’ of [the court’s] analysis is a rule of ‘general application ... designed for ... evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule.’ ” Id. (first alteration in original) (quoting Wright v. West, 505 U.S. 277, 309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring)).
We find that many factors weigh in favor of concluding that Kwan did not announce a new rule of criminal procedure. First, the language of both Chaidez and Padilla indicates that a court would not be creating a new rule by holding only that defense counsel’s affirmative misrepresentations regarding immigration consequences could constitute an IAC claim. In response to Justice Sotomayor’s dissent in Chaidez, which argued that Padilla itself was not a new rule based on cases such as Kwan, Chaidez, 133 S.Ct. at 1118 (Sotoma-yor, J., dissenting), the Chaidez majority explained that “those decisions reasoned only that a lawyer may not affirmatively misrepresent his expertise or otherwise actively mislead his client on any important matter, however related to a criminal prosecution,” id. at 1112 (majority op.). The Court described the rule barring affirmative misrepresentations under Strickland — “regardless whether they concerned deportation or another collateral matter”— as a “limited” rule, which, it concluded, did not apply to Chaidez’s failure-to-advise case. Id. Finally, the Chaidez majority noted that “Padilla would not have created a new rule had it only applied Strickland’s general standard to yet another factual situation — that is, had Padilla merely made clear that a lawyer who neglects to inform a client about the risk of deportation is professionally 'incompetent.” Id. at 1108. Justice Sotomayor explained that “[t]he majority believes that [Kwan and related cases] did not meaningfully alter the state of the law in the lower courts before Padilla, because they merely applied the age-old principle that a lawyer may not affirmatively mislead a client.” Id. at 1119 (Sotomayor, J., dissenting).
The distinction between affirmative misrepresentations and failure to advise also is reflected in Padilla. There, the Solicitor General argued that the Court should^ *1157 adopt a more narrow rule, similar to Kwan, whereby counsel’s performance would only be deficient under Strickland if the attorney gave “misadvice” about collateral/immigration consequences. Brief for United States as Amicus Curiae Supporting Affirmance, Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (No. 08-651), 2009 WL 2509223, *6-7, 22-25. Although the Padilla majority rejected this position, 559 U.S. at 369-74, 130 S.Ct. 1473, Justice Alito advocated for the adoption of this narrower rule in his concurrence, id. at 384-87, 130 S.Ct. 1473 (Alito, J., concurring). Justice Alito characterized the majority’s rule as a “dramatic departure from precedent,” a “major upheaval in Sixth Amendment law,” and a “dramatic expansion of the scope of criminal defense counsel’s duties under the Sixth Amendment.” Id. at 377, 383, 130 S.Ct. 1473. By contrast, Justice Alito explained the Solicitor General’s narrower rule would “not require any upheaval in the law.” Id. at 386, 130 S.Ct. 1473. He additionally noted that “the vast majority of the lower courts considering claims of ineffective assistance in the plea context have distinguished between defense counsel who remain silent and defense counsel who give affirmative misadvice.” Id. (internal quotation marks and brackets omitted). Read together, Chaidez and Padilla thus strongly indicate that the Court would not have considered the rule in Kwan to be a new rule.
Second, at the time Chan’s conviction became final there was ample support in federal courts for the Kwan rule. By 2000, both courts of appeals to reach the issue had concluded that affirmative misrepresentations regarding immigration consequences could support an IAC claim in certain circumstances. See Downs-Morgan v. United States, 765 F.2d 1534, 1540-41 (11th Cir.1985); United States v. Briscoe, 432 F.2d 1351, 1353-54 (D.C.Cir.1970). Additionally, many district courts had reached the same conclusion. See, e.g., United States v. Khalaf, 116 F.Supp.2d 210, 215 (D.Mass.1999); see also United States v. Abramian, No. CR 02-00945 MMM, 2014 WL 2586666, at *6 (C.D.Cak June 10, 2014) (compiling cases). Several of our sister circuits had also concluded that affirmative misrepresentations regarding parole consequences, also considered to be a “collateral consequence” of a conviction, could establish an IAC claim. See James v. Cain, 56 F.3d 662, 667-69 (5th Cir.1995); Holmes v. United States, 876 F.2d 1545, 1551-53 (11th Cir.1989); Sparks v. Sowders, 852 F.2d 882, 885 (6th Cir.1988); Strader v. Garrison, 611 F.2d 61, 65 (4th Cir.1979). As such, “the [Kwan ] rule was indicated, and was awaiting an instance in which it would be pronounced.” Kovacs v. United States, 744 F.3d 44, 50 (2d Cir.2014). Moreover, we need not cite to a particular pre-2000 case stating that affirmative misadvice constitutes IAC for Kwan to not be a new rule under Teague because Kwan merely asserted an “age-old principle” that attorneys can be held liable if they affirmatively misadvise their clients. See Chaidez, 133 S.Ct. at 1119 (Sotomayor, J., dissenting); Dyer v. Calderon, 151 F.3d 970, 984 (9th Cir.1998) (en banc) (“[A] rule needs to be announced for purposes of Teague only if it’s new. What we have here is the antithesis of Teague — a rule so deeply embedded in the fabric of due process that everyone takes it for granted.”).
Although we join our colleagues on the Second Circuit in finding pr e-Padilla circuit precedent on affirmative misrepresentations to be retroactive, see Kovacs, 744 F.3d at 50-51, we acknowledge that our conclusion puts us at odds with the Seventh Circuit’s ruling in Chavarria v. United States, 739 F.3d 360 (7th Cir.2014). There, the Seventh Circuit rejected “affirmative misadvice ... under pr e-Padilla law” as a basis for an IAC claim for two *1158 reasons: “[F]irst, ... the distinction between affirmative misadvice and non-advice was not a relevant factor in Padilla,” and “[s]econd, the precedent, pre-Padilla, supporting the application of Strickland in this context is insufficient to satisfy Teag-ue.” Id. at 362.
We respectfully disagree with both of these points. First, while Padilla certainly breaks down the barrier between affirmative misrepresentations and failure to advise — at least as to deportation advice— henceforth, Justice Alito’s concurrence and Chaidez strongly suggest that the impact of Padilla would have been far different had the Supreme Court simply adopted the narrower Kwan rule. As such, while the distinction may be “irrelevant” for future IAC claims, the distinction is relevant for our Teague analysis above. Second, as we explain above, we find ample support in the federal courts pre-Padilla for the rule that affirmative misrepresentations regarding immigration consequences could support IAC claims. As Chaidez noted, Kwan and similar cases “existed happily with precedent” that denied IAC claims based on failure to advise. 133 S.Ct. at 1112.
Ultimately, we read the language in Chaidez differently than the Seventh Circuit did in Chavarria, and we agree with the Second Circuit’s analysis in Kovacs. We thus conclude that Kwan did not announce a new rule of criminal procedure under Teague and that the rule in Kwan— affirmative misrepresentations by defense counsel regarding immigration consequences is deficient under Strickland — can support Chan’s IAC claim.
IY. Conclusion
The district court dismissed Chan’s petition because it concluded that Kwan was a new rule of criminal procedure under Teague and did not apply retroactively. Because we conclude otherwise, we reverse the district court’s dismissal. However, the district court did not consider the merits of Chan’s petition because it was dismissed on this ground alone. Accordingly, we remand the ease to the district court to evaluate the merits of Chan’s petition in the first instance.
REVERSED and REMANDED.

. The government made this argument before the district court, but has not pursued it on appeal. Although the government has thus waived this argument, Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.1999), we find it a necessary starting point for our analysis.

. Of course, there is a threshold determina- . tion as to whether the rule presented is "a substantive rule or a procedural rule” as " ‘Teague by its terms applies only to procedural rules.' ” Hayes v. Brown, 399 F.3d 972, 982 (9th Cir.2005) (en banc) (quoting Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). Neither party has argued that the rule in this case is sub *1156 stantive, and we conclude that because it “does not affect the scope of a substantive criminal statute,’’ the rule here is clearly procedural. See id.