NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 03 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



MATIAS VELAZQUEZ,

Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

Respondent - Appellee.

No. 14-16343

D.C. Nos.    2:11-cv-00820-SMM
             2:97-cr-00361-RCB-1

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Argued and Submitted April 15, 2016
San Francisco, California

Before: O'SCANNLAIN, CLIFTON, and N.R. SMITH, Circuit Judges.

Appellant Matias Velazquez appeals the district court's order denying his

"Motion to Vacate Plea of Guilty & Set Aside Judgement [sic]/Motion for

Expungement."  We affirm.

---

        *       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Like the court below, we construe Velazquez's motion as a petition for error coram nobis relief. In order to obtain coram nobis relief, a movant must establish that: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987).

A movant may satisfy the fundamental error requirement by showing that he received ineffective assistance of counsel. *United States v. Kwan*, 407 F.3d 1005, 1014 (9th Cir. 2005). To prevail on an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for deficiencies in counsel's performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Velazquez has not made either showing.

I

Because Velazquez's guilty plea occurred before the Supreme Court decided *Padilla v. Kentucky*, 559 U.S. 356 (2010), an allegation that his counsel merely "failed to advise" him about the immigration consequences of his plea is

2

insufficient to satisfy *Strickland*'s first prong. *Padilla*, 559 U.S. at 371; *see also*

*Chaidez v. United States*, 133 S. Ct. 1103, 1105 (2013). Rather, Velazquez must

demonstrate that his attorney "affirmatively misle[d]" him regarding the

immigration consequences of a guilty plea. *Kwan*, 407 F.3d at 1008; *see also*

*United States v. Chan*, 792 F.3d 1151, 1154 (9th Cir. 2015). We doubt whether

Velazquez has done so.

First, we do not believe it would have been apparent to any competent

lawyer at the time of Velazquez's plea that his crime constituted an aggravated

felony. The statute to which Velazquez pled guilty contains no specific dollar

amount as an element, and it took the Supreme Court's decision in *Nijhawan v.

Holder*, 557 U.S. 29, 32 (2009), to clarify that courts ought to examine the record

of conviction rather than the statutory elements alone to determine whether the

$10,000 requirement in 8 U.S.C. § 1101(a)(43)(M)(i) is satisfied. *See Kawashima

v. Mukasey*, 530 F.3d 1111, 1118–24 (9th Cir. 2008) (O'Scannlain, J. concurring)

(explaining the confusion surrounding 8 U.S.C. § 1101(a)(43)(M)(i) in the Ninth

Circuit prior to *Nijhawan*).

Second, Velazquez's attorney did not affirmatively mislead him. Unlike the

attorney in *Kwan*, Attorney de la Vara did not deny that Velazquez's plea could

have immigration consequences. Instead, he told Velazquez he "could not

3

guarantee what the INS would do" and "did not promise [him] that he would not be deported." Granted, Attorney de la Vara told Velazquez that in his experience, the INS "usually followed" a court's recommendation against deportation, when the court's power to make mandatory recommendations had since been rescinded. *See Padilla*, 559 U.S. at 361–64 (explaining Congress's decision to do away with the JRAD procedure). But even accounting for this change in law, Attorney de la Vara's statement was hardly an affirmative misrepresentation. By stressing that the INS "usually followed" a court's recommendation, Attorney de la Vara implied that the recommendation would not be binding.

Moreover, the INS still possesses discretion to abandon deportation proceedings in cases involving aggravated felonies, and courts sometimes do make recommendations that the INS do just that. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483–84 (1999) (explaining that at each stage of deportation proceedings "the Executive has discretion to abandon the endeavor"); *see also, e.g.,Nunez v. Attorney General*, 226 F. App'x 177, 178–79 (3d Cir. 2007) (describing a district court's recommendation that an individual who had committed an aggravated felony not be deported); *United States v. Aguilar*, 133 F. Supp. 3d 468, 470 (E.D.N.Y. 2015) (setting out a policy "regarding the issuance of recommendations to immigration judges adjudicating deportation

proceedings of nonviolent citizens who have been found guilty of an illegal activity"). Velazquez's counsel did not render deficient performance.

## II

Even if it is assumed that Velazquez has satisfied the performance prong under *Strickland*, Velazquez has also failed to establish a reasonable probability he was prejudiced by his attorney's performance. Thus, he cannot establish the fundamental error requirement under *Hirabayashi*. *See Kwan*, 407 F.3d at 1014–15.

In the context of a plea, a petitioner satisfies the prejudice prong of the *Strickland* test only where "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). No such probability exists in Velazquez's case. In his declaration, Attorney de la Vara stated that the prosecutor did not offer Velazquez a plea agreement to any other offense, despite de la Vara's concern over immigration consequences. That obstinance on the part of the prosecutor makes sense, as Attorney de la Vara also observed that "the evidence against Mr. Velazquez was strong" and that Velazquez did not have "any viable trial defenses." In light of these facts, we think it highly unlikely that Velazquez would have assumed the risk of going to trial, or could have avoided the

5

immigration consequences of a conviction by doing so. Because the evidence did not demonstrate that Velazquez could have secured a more favorable plea agreement or would have proceeded to trial, we cannot conclude that Velazquez was prejudiced by his attorney's performance.

**AFFIRMED.**

No. 14-16343*, Velazquez v. United States.*

CLIFTON, Circuit Judge, dissenting:

I respectfully dissent. Velazquez's defense attorney presented him a plea agreement that contained a promise on the part of the prosecutor to ask the judge to recommend to INS that Velazquez not be deported as a result of the conviction. The attorney told Velazquez that INS usually followed the court's recommendation about deportation. That advice was wrong.

That incorrect advice affirmatively misled Velazquez in a way that amounted to deficient performance of counsel under *United States v. Kwan*, 407 F.3d 1005, 1015 (9th Cir. 2005). Velazquez's attorney apparently did not realize that a guilty plea would result in an aggravated felony conviction and deportation, regardless of any judicial recommendation. Even if, as the majority contends, it were the case that a competent attorney might not have recognized at that time that the crime to which Velazquez pled guilty constituted an aggravated felony, or that INS could conceivably have decided not to pursue removal anyway, those observations miss the point. Velazquez was not told by his attorney that the law was uncertain, or that INS might decide not to follow through with deportation. He was told that INS usually followed the court's recommendation, and that was not true. His attorney did not give him a guarantee that he would avoid deportation, but he surely gave him false hope that he would probably avoid deportation by taking

the plea deal. In particular, he was led to believe that a judicial recommendation would be of use to him in a circumstance where that was not true. That false hope induced Velazquez to agree to the plea deal. The attorney's performance was deficient insofar as he effectively misled his client as to the immigration consequences of his plea agreement.

I also conclude that Velazquez was prejudiced by the deficient performance. Velazquez cooperated with the government and received a light sentence of probation. The prosecutor agreed to ask the court to recommend against deportation. It seems likely to me that a plea to a different offense that did not constitute an aggravated felony could have been negotiated, if the impact of the plea that he entered had been properly understood. The prosecutor may not have offered a plea agreement to a different offense, but it doesn't appear that he was asked for a different deal, because Velazquez's counsel did not understand that it could make a difference. Given that the prosecutor wanted Velazquez's cooperation and agreed to ask the judge to recommend that Velazquez not be deported, there was a reasonable probability that the prosecutor would have agreed to a plea to an offense that did not have the dire deportation consequence of the plea that Velazquez entered. That is enough to establish prejudice.

I would vacate the dismissal and direct the entry of relief.

2