**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES R. LEWIS, Senior Airman (E-4), U.S. Airforce, *Petitioner-Appellant*, <br><br> v. <br><br> UNITED STATES OF AMERICA, *Respondent-Appellee.* | No. 19-56475 <br><br> D.C. No. 3:18-cv-00911-L-KSC <br><br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted December 8, 2020
Pasadena, California

Filed January 25, 2021

Before: Sidney R. Thomas, Chief Judge, Diarmuid F.
O'Scannlain, Circuit Judge, and David A. Ezra,[*]
District Judge.

Opinion by Judge O'Scannlain

---

[*] The Honorable David A. Ezra, United States District Judge for the Western District of Texas, sitting by designation.

**SUMMARY**[**]

**Habeas Corpus**

The panel affirmed the district court's denial of a habeas corpus petition brought by Senior Airman James Lewis, United States Air Force, challenging his 2012 court-martial conviction for one count of aggravated sexual assault and two counts of wrongful sexual conduct.

In an unrelated case decided after Lewis's conviction became final, *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), the Court of Appeals for the Armed Forces held unconstitutional a pattern jury instruction on Military Rule of Evidence ("M.R.E.") 413 under which jurors may consider evidence of any *one* charged sexual offense as showing the defendant's propensity to have committed any of the *other* charged sexual offenses.

In his federal habeas petition filed after *Hills* was decided, Lewis argued that the M.R.E. 413 propensity instruction given at his court-martial was in violation of the Fifth Amendment as interpreted in *Hills*, and that he had been denied effective assistance of counsel on direct appeal when his appellate counsel failed to challenge the constitutionality of such instruction.

The panel held that *Hills*—which held that the use of a charged sexual offenses to show propensity to commit other charged sexual offenses violated the presumption of

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

innocence and right to have all findings made clearly beyond a reasonable doubt, as guaranteed by the Fifth Amendment—announced a new rule, but that the rule does not fall under either exception for nonretroactivity, as it is neither a substantive rule nor a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. The panel concluded that *Hills* therefore does not apply retroactively in Lewis's collateral attack on his court-martial conviction.

---

## COUNSEL

Brian L. Mizer (argued) and Jarett Merk, Air Force Appellate Defense Division, United States Air Force, Joint Base Andrews, Maryland, for Petitioner-Appellant.

Hank D. Nguyen (argued), Litigation Attorney, Air Force Legal Operations Agency, Andrews Air Force Base, Maryland; Robert S. Brewer Jr., United States Attorney; Katherine L. Parker, Chief, Civil Division; David B. Wallace, Assistant United States Attorney; United States Attorney's Office, San Diego, California; for Respondent-Appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a rule announced by the United States Court of Appeals for the Armed Forces applies retroactively to collateral attacks on court-martial convictions which became final prior to its announcement.

I

Senior Airman James Lewis, United States Air Force, brings this habeas petition in which he challenges his 2012 court-martial convictions for one count of aggravated sexual assault and two counts of wrongful sexual conduct.

A

The events underlying Lewis's court-martial convictions occurred between 2010 and 2012, while he was stationed at Barksdale Air Force Base. During his time at Barksdale, Lewis committed or allegedly committed a series of sexual offenses against four young female Airmen who were also stationed there.

In late 2010, Lewis allegedly raped two female Airmen—one, while she was asleep, the other, while she was too inebriated to give legally valid consent. In July 2011, Lewis allegedly groped a third female Airman while he believed she was asleep. In June 2012, Lewis allegedly groped a fourth female Airman, then allegedly masturbated in front of her, after she had told Lewis to leave her bedroom.

B

1

Lewis was charged with two specifications of aggravated sexual assault, two specifications of abusive sexual contact, and one specification of indecent conduct, all in violation of Article 120 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 920. At his 2012 court-martial, Lewis pleaded not guilty to all five specifications.

Before trial, Lewis filed a motion to sever, arguing that it would be manifestly unjust to try him for crimes against four separate victims in a single court-martial and asking for four separate trials. The military judge denied the motion and proceeded to try all five specifications together.

At Lewis's court-martial, the military judge instructed jurors that under Military Rule of Evidence ("M.R.E.") 413, they may consider evidence of any *one* charged sexual offense (after determining by a preponderance that such offense had occurred) as showing Lewis's propensity to have committed any of the *other* charged sexual offenses.[1] At the time, such instruction was the pattern instruction provided in the official Military Judge's Benchbook ("Benchbook"). *See*

---

[1] Lewis argues that such instruction was given "[o]ver defense objection." But that mischaracterizes the record: The cited page in the record shows that Lewis's trial counsel entered a motion *in limine*, objecting only to the use of M.R.E. 413 evidence of an *uncharged* sexual offense he had allegedly committed—on which the military judge actually ruled in Lewis's favor. But when the military judge proposed reading the Benchbook instruction in relation to evidence of Lewis's *charged* sexual offenses, his trial counsel did not object.

Dep't of the Army, Pam. 27-9, Legal Services, Benchbook ch. 7, para. 7-13-1 (2006).

The jury, having been so instructed, then found Lewis guilty of one count of aggravated sexual assault, against "Airman F," and two counts of wrongful sexual conduct, one each against "Airman Y" and "Airman B." The jury acquitted Lewis of aggravated sexual assault against "Airman D" and indecent conduct against "Airman B." The military judge sentenced Lewis to forfeit all pay and allowances, to be reduced to the grade of E-1 (from his prior grade of E-4), to be confined for nine years, and to be dishonorably discharged.

2

Lewis then initiated the process of direct appeal in the military courts: First, he submitted "clemency matters" to the "convening authority" of the underlying court-martial, which approved the court-martial's findings and sentence.

In 2014, the Air Force Court of Criminal Appeals ("AFCCA") affirmed the findings and sentence in Lewis's court-martial. *See United States v. Lewis*, No. ACM 38321, 2014 WL 5511094, at *9 (A.F. Ct. Crim. App. Oct. 9, 2014).

Lewis then filed a Petition for Review in the Court of Appeals for the Armed Forces ("CAAF"). On February 10, 2015, the CAAF denied review, at which time Lewis's conviction became final for purposes of the retroactivity question before us. *Loving v. United States*, 64 M.J. 132, 136–38 (C.A.A.F. 2006).

3

In an unrelated 2016 case—which is to say, a year *after* Lewis's conviction had become final—the CAAF held unconstitutional the Benchbook's pattern jury instruction on M.R.E. 413, reasoning that it violated the presumption of innocence and basic due process. *United States v. Hills*, 75 M.J. 350, 353, 356 (C.A.A.F. 2016); *see also United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017) (clarifying *Hills*).

In 2017, Lewis submitted a Petition for Extraordinary Writ in the Nature of a Writ of *Coram Nobis* to the AFCCA. Lewis contended that under *Hills* and *Hukill*, the military judge in his case had committed constitutional error in permitting evidence of the charged offenses to be used for propensity and in instructing the jury accordingly. *Lewis v. United States*, 76 M.J. 829, 832 (A.F. Ct. Crim. App. 2017), *writ-appeal denied*, 77 M.J. 106 (C.A.A.F. 2017). Lewis sought a rehearing or, in the alternative, a new appellate review of his convictions. *Id.* The AFCCA denied Lewis's *coram nobis* petition on two separate grounds: First, the AFCCA held that Lewis's collateral attack in military court was barred while he was still serving his sentence and therefore eligible to file a habeas petition in federal district court. *Id.* at 834. Second, the AFCCA held that the new rule announced in *Hills* was not retroactive. *Id.* at 834–36.

4

Lewis subsequently filed this federal habeas petition in the Southern District of California. Lewis again argued that the M.R.E. 413 propensity instruction given at his court-martial was in violation of the Fifth Amendment as interpreted in *Hills* and *Hukill*. He additionally argued that he had been denied effective assistance of counsel on direct

appeal, in violation of the Sixth Amendment, when his appellate counsel failed to challenge the constitutionality of such instruction before the AFCCA in 2014.

The district court denied Lewis's habeas petition without prejudice, ruling that the *Hills* rule does not apply retroactively, that any *Hills* error would have been harmless in any event, and that Lewis did not receive ineffective assistance of counsel ("IAC") on direct appeal.

Lewis timely appealed to this Court.

## II

Lewis here argues that the Benchbook's pattern jury instruction on M.R.E. 413 propensity inferences, a version of which was given at his court-martial, was invalidated as unconstitutional by the holdings in *Hills* and *Hukill*. The United States does not dispute that. Yet of course, Lewis's conviction occurred in 2012 and became "final" in February 2015—which, as he concedes, was 503 days *before* the CAAF announced its holding in *Hills*. Accordingly, the United States argues that the *Hills* rule cannot be applied retroactively to Lewis's 2012 court-martial. We therefore ask:

Is the *Hills* rule entitled to retroactive application?

## A

Retroactivity questions are governed by *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion).[2] The general rule

---

[2] We note that the typical and paradigmatic application of *Teague* concerns the retroactive applicability of rules announced by the U.S. Supreme Court, as they might bear on state-court convictions. This case,

"[u]nder . . . *Teague*"—subject only to "narrow exceptions" —is that "federal habeas corpus petitioners may not avail themselves of new rules of criminal procedure." *Beard v. Banks*, 542 U.S. 406, 408 (2004). Because Lewis concedes that his conviction became "final" before *Hills* was announced, we must first determine whether the *Hills* rule was in fact "new." *See id* at 411. Second, we must determine whether the *Hills* rule, if "new," falls under either of the "two exceptions" to *Teague*'s principle of non-retroactivity. *See id.*

B

1

Did *Hills* "actually" announce a "new" rule when it held that the use of charged sexual offenses to show propensity to commit other charged sexual offenses "violated [the] presumption of innocence and right to have all findings made clearly beyond a reasonable doubt," as guaranteed by the Fifth Amendment? 75 M.J. at 356. More specifically, was the *Hills* rule "dictated by precedent" or would it have been "apparent to all reasonable jurists" that *Hills* was the

---

by contrast, concerns a rule announced by the *Court of Appeals for the Armed Forces*, as it might bear on a *court-martial* conviction. As such, the analogy to *Teague* is imperfect, and reasonable jurists may disagree as to whether *Teague* is the proper framework for analyzing the retroactivity of rules announced by the CAAF.

That being said, military courts have held that *Teague is* the proper framework for analyzing the retroactivity of the CAAF's own newly announced constitutional rules of criminal procedure. *See, e.g.*, *In re Best*, 79 M.J. 594, 599–602 (N-M. Ct. Crim. App. 2019); *Lewis*, 76 M.J. at 834–36. For purposes of the instant appeal, we assume these cases were rightly decided and therefore analyze the *Hills* rule's retroactivity under *Teague*.

logical extension of precedents already on the books in February 2015? *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997); *see United States v. Chan*, 792 F.3d 1151, 1156 (9th Cir. 2015).

Our first clue is the CAAF's own statement that the question presented in *Hills* was a matter of "first impression." *Hills*, 75 M.J. at 353.

Further, as noted by the AFCCA in its denial of Lewis's *coram nobis* petition, *see Lewis*, 76 M.J. at 835, the pre-*Hills* legal landscape on M.R.E. 413 was governed primarily by *United States v. Wright*, in which the CAAF upheld M.R.E. 413 against a facial challenge to its constitutionality, 53 M.J. 476, 483 (C.A.A.F. 2000). Nine years later, the CAAF *extended* the holding of *Wright*, suggesting that M.R.E. 413 could be constitutionally applied to admit evidence of charged *as well as uncharged* offenses of sexual assault to show propensity. *See United States v. Burton*, 67 M.J. 150, 152 (C.A.A.F. 2009). "Moreover," as the AFCCA observed, "in the same year that [Lewis's] case became final, three [Military] Courts of Criminal Appeals specifically held that evidence of charged offenses of sexual assault could properly be used under [M.R.E.] 413, only to be overruled by *Hills* the following year." *Lewis*, 76 M.J. at 835 (citing *United States v. Barnes*, 74 M.J. 692, 697–98 (A. Ct. Crim. App. 2015); *United States v. Bass*, 74 M.J. 806, 815 (N-M. Ct. Crim. App. 2015); *United States v. Maliwat*, No. ACM 38579, 2015 WL 6655541, at *5–6 (A.F. Ct. Crim. App. Oct. 19, 2015)).

Against such backdrop, it would strain credibility to suggest that the *Hills* rule was "dictated by precedent," or even that it would have been "apparent to all reasonable jurists" that such rule was a logical *extension* of existing jurisprudence. *Lambrix*, 520 U.S. at 527–28. To the contrary,

*Hills* was in logical *opposition* to the existing precedents when Lewis's conviction became final.

Lewis contends that *Hills* followed in the *spirit* of *Wright*, notwithstanding the fact that *Hills* ruled in favor of a constitutional challenge to M.R.E. 413 while *Wright* rejected such a challenge. In particular, he points to *Wright*'s dicta that M.R.E. 413 "*would* be fundamentally unfair *if* it undermine[d] the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt." 53 M.J. at 481 (emphasis added). Based on such dicta, Lewis contends that in *Hills*, the CAAF merely acknowledged that the instruction given in both that case and his own ran afoul of *Wright*.

As a matter of common sense, Lewis's interpretation of the relationship between *Wright* and *Hills* seems far-fetched: The relied-upon passage in *Wright* essentially says, "If M.R.E. 413 violated the core tenets of Due Process, it would be unconstitutional; but it doesn't, so it isn't." *Hills* did a great deal more than merely acknowledging such anodyne reasoning when it held that M.R.E. 413 *does* violate the core tenets of Due Process.

Lewis's argument runs afoul not only of common sense, but also of our Court's *Teague* jurisprudence. On this point, the United States offers a helpful analogy to our application of *Teague* to the rule announced in *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam). Like *Hills*, *Cage* reviewed a problematic jury instruction. There, the Supreme Court held that if reasonable jurors "could have interpreted the [relevant] instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause," then the instruction violated the "proof beyond a reasonable doubt" protections of *In re Winship*, 397 U.S. 358 (1970). *Cage*, 498 U.S. at 39–41. That is, *Cage* might have

been said to have "followed in the *spirit* of *Winship*," in essentially the same way Lewis now claims that *Hills* follows in the spirit of *Wright*. Yet when presented with a claim for retroactive application of *Cage*, we held that "*Cage* pretty clearly created a new rule." *Leavitt v. Arave*, 383 F.3d 809, 817 (9th Cir. 2004) (citing *Tyler v. Cain*, 533 U.S. 656, 665 (U.S. 2001)). If *Cage* constituted a "new rule," then so must have *Hills*.

2

Because the *Hills* rule "is actually 'new,'" the next question is "whether it falls within either of the two exceptions to nonretroactivity." *Banks*, 542 U.S. at 411 (citing *Lambrix*, 520 U.S. at 527). If the *Hills* rule does not fall under either recognized exception, then Lewis may not avail himself of such rule in this collateral attack. *See Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004).

A new rule may be retroactively applied if it is "substantive." *Id.* at 351. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. . . . In contrast, rules that regulate only the manner of determining . . . culpability are procedural." *Id.* at 353. The *Hills* rule clearly falls into the latter category. A rule holding a jury instruction unconstitutional is "based upon the thought that [the instruction] had an effect on the burden of persuasion. That does not go to the substance of the crime; it is a matter of procedure." *Leavitt*, 383 F.3d at 842 (Fernandez, J., concurring) (citing, *inter alia*, *Winship*, 397 U.S. at 363–64).

More relevant here is the exception for "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Summerlin*, 542 U.S. at 352 (quoting *Saffle v. Parks*, 494 U.S. 484, 495

(1990) (quoting *Teague*, 489 U.S. at 311)). We have recently acknowledged that "[t]his class of rules is extremely narrow." *Young v. Pfeiffer*, 933 F.3d 1123, 1125 (9th Cir. 2019) (quoting *Summerlin*, 542 U.S. at 352 (citing *Tyler*, 533 U.S. at 667 n.7)).

The *Hills* rule is a far cry from the "extremely narrow" class of "watershed" procedural rules exempt from *Teague* non-retroactivity. *Cf. id.* "To fall within this exception, a new rule must meet two requirements: Infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction, and the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Tyler*, 533 U.S. at 665 (internal quotations and citations omitted). *Hills* satisfies *neither* of these requirements.

As to the first requirement, the *Hills* rule is not inherently "necessary to prevent an impermissibly large risk of an inaccurate conviction." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (internal quotations omitted). That is because, as the Government cogently explains, "*Hills* merely prevents the jury from being instructed to make findings on additional uses of already-admitted evidence." That is not to deny that the *overall* effect of *Hills* is almost certainly to reduce inaccurate convictions. But "[t]he 'watershed' exception does not apply to every rule that promotes accuracy and guarantees due process." *Leavitt*, 383 F.3d at 825.

As to the second requirement, *Hills* does not "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Tyler*, 533 U.S. at 665 (internal quotations omitted). This is best illustrated by way of analogy to examples of the procedural elements which courts *have* deemed "bedrock," and the rules which courts *have* deemed "groundbreaking." *Teague* "illustrated" such

bedrock elements with "classic" examples such as the use of perjured testimony and extorted confessions. 489 U.S. at 313–14. The use of propensity evidence under M.R.E. 413, while surely troubling, is not on the same plane as these examples. Correspondingly, "[t]he sweeping rule announced in *Gideon v. Wainwright*, that counsel shall be provided in all criminal trials for serious offenses, is the prototypical example of a watershed rule" that occasioned a "groundbreaking" change in the American understanding of procedural fairness. *United States v. Sanchez-Cervantes*, 282 F.3d 664, 669 (9th Cir. 2002) (citing *Gideon*, 372 U.S. 335 (1963)) (footnote omitted); *accord Bockting*, 549 U.S. at 421. The Government pithily—and quite rightly— observes that "*Hills* is no *Gideon*."

## C

At bottom, the district court found that "*Hills* announced a new rule of criminal procedure which does not fall under an exception warranting retroactive application to [Lewis's] case." We agree.[3]

---

[3] Because we so hold, we decline to reach the issue of whether the district court erred in concluding that any putative *Hills* error would have been harmless beyond reasonable doubt.

We also decline to reach the question of whether the district court was right to suggest, in its dicta, that Lewis's claims are procedurally defaulted. Similarly, we decline to reach the question of whether the district court erred when it held, in the alternative, that Lewis's constitutional claims received "full and fair consideration" in the military courts, such that they would be barred from review in the federal civilian courts.

And because we affirm the district court solely on grounds *other* than procedural default, Lewis's IAC claim (which he had put forth to

### III

The district court's denial of Lewis's habeas petition is **AFFIRMED**.

---

show adequate "cause" to excuse any procedural default) is rendered moot. Therefore, we decline to reach the issue of whether the district court erred in finding that Lewis had failed to state a claim for IAC.